[No. B177040. Second Dist., Div. Six. July 21, 2005.]

MARIA DEL ROSARIO CALDERON et al., Plaintiffs and Appellants, v. HOWARD NORMAN GLICK et al. Defendants and Respondents.

**COUNSEL**

Ajalat & Ajalat, Sol P. Ajalat and Stephen P. Ajalat for Plaintiffs and Appellants.

Herzfeld & Rubin, Michael A. Zuk and Daniel Abrahamian for Defendants and Respondents Howard Norman Glick, M.D., and Jerry Bruns-Garcia, M.D.

Rushfeldt, Shelley & Drake Kenneth W. Drake and Erica A. Levitt for Defendant and Respondent Thomas Wright, Ph.D.

**OPINION**

**YEGAN, J.**—A deranged and suicidal gunman shot and killed three members of his former girlfriend's family. He wounded two more. The gunman had been the patient of psychotherapists but he had not communicated any threats of physical violence against the former girlfriend or members of her family. We empathize with the remaining members of the family but the Legislature has expressly precluded monetary recovery from psychotherapists in this situation.

This is an appeal from the judgment entered following the grant of respondents' motion for summary judgment. Respondents are psychotherapists.[1] Their patient Reynoldo Rodriguez (Rodriguez) shot and killed three members of appellants' family and injured more relatives.[2] Appellants'

---

[1] Respondents are Howard Norman Glick, M.D., Jerry R. Bruns-Garcia, M.D., and Thomas Wright, Ph.D.

[2] Appellants are Maria del Rosario Calderon, Ana Maria Calderon, Rafael Calderon, Sr., Lucia E. Calderon Vargas, Rafael Calderon III, and Rigoberto Calderon.

complaint alleged causes of action for wrongful death and personal injuries based on failure to warn and professional malpractice. We affirm.

*Facts*

Dr. Bruns-Garcia was the owner of La Mer Medical group (hereafter La Mer). On June 28 and 29, 2001, Rodriguez went to La Mer for mental health reasons. He was evaluated by a psychiatrist, Dr. Howard Glick, and a licensed marriage and family therapist, Dr. Thomas Wright. Dr. Wright had a master's degree and a Ph.D. in psychology.

Rodriguez said that his problems began in March 2001 when he donated blood to the American Red Cross. His blood tested positive for HTLV (human T-cell lymphotropic virus). The Red Cross sent him a fact sheet stating that "only a small number (less than 2%) of individuals having a positive supplemental test for HTLV will ever develop a health problem, and if they do, it may take 20–40 years for the disease to appear." Nevertheless, Rodriguez told Dr. Wright and Dr. Glick that he was afraid that the virus would kill him. He falsely believed that his former girlfriend, Maria del Rosario Calderon (Maria), had transmitted the disease to him. He "was upset" with her for having given him the disease. He thought that Maria knew she was infected and had "infected him on purpose." Rodriguez denied having suicidal thoughts or intentions. But because of the virus, he had recurrent thoughts of death.

Dr. Wright believed that Rodriguez might be suffering from an undifferentiated somatoform disorder, obsessive compulsive disorder, obsessive compulsive personality disorder, major depression, and a delusional disorder. Dr. Glick diagnosed appellant as suffering from a major depression.

On July 9, 2001, Rodriguez returned to La Mer and was examined by Dr. Glick. Rodriguez was still delusional but said that he was not suicidal.

On July 16, 2001, Rodriguez was examined by Dr. Wright. Dr. Wright's notes state that Rodriguez "continues to be delusional" about his illness. Dr. Wright testified: "I looked at [Rodriguez] straight in the face clearly and I said, 'Do you have any intention to hurt your former girlfriend, Maria

Calderon,' and he looked at me straight and he said no. I looked at his body language and there was no fluctuation, there was no deviation. I addressed that very clearly with him and his answer was very clear to me. I looked at him and I lingered to make sure that there was no deviation in his behavior, because obviously I was concerned about this issue. . . . I concluded that at that time he was not a risk."

On July 30, 2001, Dr. Glick saw Rodriguez at La Mer. Rodriguez said that he felt less anxious.

Between July 30 and August 13, 2001, a member of Rodriguez's family telephoned La Mer and said that Rodriguez "was still quite anxious and obsessive regarding having a disease." Rodriguez had been taking Celexa. "The Celexa dosage was increased and Risperdal was prescribed for the delusional thinking and to reduce anxiety."

Rodriguez's last visit to La Mer was on August 13, 2001. He was seen by Dr. Glick and Dr. Wright. Rodriguez said that he was feeling better and that he had no thoughts of hurting himself.

Every time Dr. Glick saw Rodriguez, Dr. Glick asked him if he intended to harm anyone. Rodriguez always said that he did not. Dr. Glick asked this question "[b]ecause [Rodriguez] had a belief system . . . out of proportion to the severity of his condition and related to a specific human being, namely his [former] girlfriend." Dr. Glick testified that Rodriguez's family members never told him that Rodriguez had expressed an intention to harm anyone.

On September 5, 2001, Rodriguez entered the home of Maria's family. He shot and killed Esperanza Martinez, Ricardo Calderon, and Shantal Rios. He shot and wounded Lucia Calderon and Rigoberto Calderon. Rafael Calderon III jumped out of a second story window. He sprained his ankle and fractured his wrist. Two days later, Rodriguez committed suicide.

*Summary Judgment Ruling*

In granting respondents' motions for summary judgment, the trial court ruled: "1) [A]s to the traditional professional negligence causes of action, [appellants] do not have standing to sue as they were not patients of [respondents] and never established a physician-patient relationship with [them] (i.e. no duty was owed to them), and 2) as to the causes of action based on a failure to warn theory . . . , essential elements of the cause of action were

missing including the absence of any evidence to show that there was ever any type of 'communication' between [respondents] and Reynaldo Rodriguez that [Rodriguez] wanted to harm Maria Calderon or her family."

### Standard of Review

■ "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850, fn. omitted.) A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850; see also § 437c, subd. (p)(2).)

■ On appeal we conduct a de novo review, applying the same standard as the trial court. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) Our obligation is " ' "to determine whether issues of fact exist, not to decide the merits of the issues themselves." ' " (*Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1228 [63 Cal.Rptr.2d 422].) We "must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations] . . . in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 843.)

### Failure to Warn

■ "As a general rule, a mental health practitioner has no duty to warn third persons about, nor any duty to predict, a patient's dangerous propensities." (*Ewing v. Northridge Hospital Medical Center* (2004) 120 Cal.App.4th 1289, 1292 [16 Cal.Rptr.3d 591].) Civil Code section 43.92 creates an

exception to this rule.[3] Subdivision (a) of section 43.92 provides: "There shall be no monetary liability on the part of, and no cause of action shall arise against, any person who is a psychotherapist as defined in Section 1010 of the Evidence Code in failing to warn of and protect from a patient's threatened violent behavior or failing to predict and warn of and protect from a patient's violent behavior *except where the patient has communicated to the psychotherapist a serious threat of physical violence against a reasonably identifiable victim or victims."* (Italics added.) ■ "[A] communication from a family member to a therapist, made for the purpose of advancing a patient's therapy, is a 'patient communication' within the meaning of section 43.92." (*Ewing v. Goldstein* (2004) 120 Cal.App.4th 807, 811 [15 Cal.Rptr.3d 864].)

■ Section 43.92 was intended " 'to limit the psychotherapists' liability for failure to warn to those circumstances where the patient has communicated an "actual threat of violence against an identified victim," and to "abolish the expansive rulings of [the California Supreme Court in *Hedlund v. Superior Court* (1983) 34 Cal.3d 695 [194 Cal.Rptr. 805, 669 P.2d 41]; *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334]] . . . that a therapist can be held liable for the mere failure to predict and warn of potential violence by his patient." ' [Citation.]" (*Ewing v. Goldstein, supra,* 120 Cal.App.4th at p. 816, fn. omitted, quoting from Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1133 (1985–1986 Reg. Sess.) May 14, 1985.) Even if a threat of violence is communicated to a psychotherapist, a duty to warn arises only "if the information communicated to the therapist leads the therapist to believe his or her patient poses a serious risk of grave bodily injury to another." (*Ewing v. Goldstein, supra,* at p. 820, italics omitted.)

■ "Section 43.92 strikes a reasonable balance in that it does not compel the therapist to predict the dangerousness of a patient. Instead, it requires the therapist to attempt to protect a victim under limited circumstances, even though the therapist's disclosure of a patient confidence will potentially disrupt or destroy the patient's trust in the therapist. However, the requirement is imposed upon the therapist only after he or she determines that the patient has made a credible threat of serious physical violence against a person." (*Ewing v. Goldstein, supra,* 120 Cal.App.4th at p. 817.)

Appellants contend that the trial court erroneously granted summary judgment on the failure to warn causes of action because there are triable issues of material fact "whether Dr. Wright or Dr. Glick *actually believed or predicted* that Reynaldo Rodriguez posed a serious threat of physical harm to Maria Calderon or her family." Appellants argue that "[a] jury could find that the facts presented demonstrate that Dr. Wright and Dr. Glick perceived such

---

[3] All statutory references are to the Civil Code unless otherwise stated.

a threat, and therefore a threat was effectively communicated." Appellants also argue that "a jury could reasonably *infer* that Rodriguez in fact *expressly* communicated to Dr. Wright and Dr. Glick that he intended to harm Maria . . . ."

A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850, fn. omitted.) The evidence submitted at the summary judgment hearing would not allow a reasonable trier of fact to find that Rodriguez had "communicated" to Dr. Glick or Dr. Wright "a serious threat of physical violence" against Maria or her family. (§ 43.92.) Every time Dr. Glick saw Rodriguez, Dr. Glick asked him if he intended to harm anyone. Rodriguez always said that he did not. Dr. Glick testified that Rodriguez's family never told him that Rodriguez had expressed an intent to harm another person.

On July 16, 2001, Dr. Wright "looked at [Rodriguez] straight in the face clearly and . . . said, ' Do you have any intention to hurt your former girlfriend, Maria Calderon,' . . . ?" Rodriguez "looked at [Dr. Wright] straight and he said no." Dr Wright "looked at [Rodriguez's] body language and there was no fluctuation, there was no deviation." He "concluded that at that time [Rodriguez] was not a risk." Accordingly, the trial court properly ruled that the failure to warn causes of action were precluded as a matter of law.[4]

### Professional Malpractice

Appellants contend that the trial court also erred by precluding the professional malpractice causes of action because: "First, [they] have demonstrated that [respondents] failed to properly and adequately treat Rodriguez, and that the services provided fell below the applicable standard of care. Second, [they] have demonstrated that Maria Calderon and her family were foreseeable victims of [respondents'] negligence." Appellants argue that section 43.92 does not bar a third party from bringing "a traditional medical malpractice action against a psychiatrist or psychologist" for negligent treatment "if it was foreseeable that the . . . negligence could result in the type of harm or injury that occurs."

---

[4] In the reply brief, appellants argue that "the limitations set forth under Section 43.92 should not even apply in this case since Dr. Wright rendered services beyond the scope of his license." However, Dr. Wright is a licensed psychotherapist within the meaning of Evidence Code section 1010, subdivision (e) and is protected by section 43.92 as long as he is providing mental health treatment to a patient.

In effect, appellants are claiming that a psychotherapist owes a duty of care to third parties who suffer reasonably foreseeable harm as a result of the therapist's negligent treatment of his or her patient. Appellants maintain that, if this duty of care is breached, section 43.92 does not shield the psychotherapist from liability even if the patient did not communicate a serious threat of physical violence against a reasonably identifiable victim.

We conclude that the trial court correctly determined that respondents did not owe a duty of care to appellants. Therefore, we need not consider whether section 43.92 shields respondents from liability for their alleged professional malpractice.

■ "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.] Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court. [Citation.]" (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 [11 Cal.Rptr.2d 51, 834 P.2d 745].)

■ Where, as here, there is no privity of contract between the parties, our Supreme Court has "employed a checklist of factors to consider in assessing legal duty . . . ." (*Bily v. Arthur Young & Co., supra,* 3 Cal.4th at p. 397.) In *Biakanja v. Irving* (1958) 49 Cal.2d 647 [320 P.2d 16], the court "outlined the factors to be considered in making such a decision: 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' " (*Bily v. Arthur Young & Co., supra,* 3 Cal.4th at p. 397, quoting from *Biakanja v. Irving, supra,* 49 Cal.2d at p. 650.)

Application of the *Biakanja* factors convinces us that respondents did not owe a duty of care to appellants. The transaction between respondents and Rodriguez was not intended to affect or benefit appellants in any way. The transaction was intended to benefit Rodriguez by providing him with therapy for his mental problems. It was not reasonably foreseeable that Rodriguez would harm members of Maria's family. They had nothing to do with the

blood virus in Rodriguez. Respondents had no information indicating that Rodriguez had been violent in the past. Lacking clairvoyant powers, they could not predict future dangerousness. Rodriguez always insisted that he did not intend to harm Maria or anyone else. Rodriguez's family never indicated to respondents that he might harm another person.

Appellants unquestionably suffered injury, but the connection between respondents' conduct and the injury is not sufficiently close to impose on respondents a duty of care to appellants. Rodriguez inflicted the injuries because of his mental illness and, in particular, his delusional belief that Maria had deliberately infected him with HTLV. Respondents were in no way responsible for Rodriguez's mental illness or delusional belief, which existed before he entered therapy.

There is no moral blame attached to respondents' conduct even if they were negligent. The evidence shows that they acted in good faith in treating Rodriguez.

Finally, we believe that imposing on respondents a duty of care to appellants would not prevent harm in future cases by encouraging greater care by psychotherapists. The duty of care that psychotherapists owe to their patients is sufficient to deter them from committing acts of professional malpractice. "Existing case law provides that a psychotherapist or other mental health care provider has a duty to use a reasonable degree of skill, knowledge and care in treating a patient, commensurate with that possessed and exercised by others practicing within that specialty in the professional community. [Citations.]" (*Kockelman v. Segal* (1998) 61 Cal.App.4th 491, 505 [71 Cal.Rptr.2d 552].)

*Appellants' Objections*

Appellants filed written objections to the motions for summary judgment. Appellants argued that respondents' statements of undisputed facts were not supported by competent, admissible evidence. However, the record does not show that the trial court ruled on the objections or that appellants made an effort to secure rulings. "Because counsel failed to obtain rulings, the objections are waived and are not preserved for appeal. [Citations.]" (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

*Disposition*

The judgment is affirmed. Respondents shall recover their costs on appeal.

Gilbert, P. J., and Perren, J., concurred.