[No. B171090. Second Dist., Div. Eight. Sept. 1, 2005.]

TIRE DISTRIBUTORS, INC., Plaintiff and Appellant, v.
GARY R. COBRAE, Defendant and Respondent.

**COUNSEL**

Lipow & Harris and Jeffrey A. Lipow for Plaintiff and Appellant.

Dunn Koes, Pamela E. Dunn and Daniel J. Koes for Defendant and Respondent.

**OPINION**

**RUBIN, J.**—Plaintiff Tire Distributors, Inc., appeals from the grant of summary judgment in favor of defendant Gary R. Cobrae after the court vacated plaintiff's earlier dismissal of defendant. For the reasons set forth, *post*, we reverse both the order vacating the dismissal and the concomitant summary judgment and remand with directions to reinstate the dismissal.

## FACTS AND PROCEDURAL HISTORY

In August 2000, Tire Distributors, Inc. (TDI), hired A-Line Construction, Inc. (A-Line) to design and install a fire protection system and other fire safety related devices in a building that TDI owned in Boise, Idaho. Paul Resnick is the president of TDI. Resnick's son-in-law, Darren Cobrae, is the president of A-Line. Gary Cobrae is Darren Cobrae's father.[1] In April 2001, TDI sued A-Line for breach of contract and fraud, contending that the work performed by A-Line was inadequate and incomplete. The Cobraes were also named as defendants, primarily on an alter ego theory of liability. A-Line responded with a cross-complaint against TDI for breach of contract and a common count of quantum meruit.

On December 27, 2002, Darren was visiting at Resnick's home. During that visit, the two men discussed ending the litigation. As a result, both men signed a handwritten document which appeared to settle their dispute. The document read:

---

[1] For ease of reference, we will refer to Darren and Gary Cobrae by their first names and will sometimes refer to them collectively as "the Cobraes."

"12/27/02
"Settlement agreement
"A-Line (Darren Cobrae)
"vs
"Tire Distributors (Paul Resnick)
"Darren/A-Line to pay Tire Distributors (Resnick)
"a total of $50,000 payable
"1. $25,000 cash by 1/31/03
"2. $25,000 payable $1000 per month, plus 7%
"interest on balance until paid in full."

On December 31, 2002, the Cobraes filed separate summary judgment motions against TDI. Gary's was based on evidence that he contended showed he had no connection with A-Line and played no part in negotiating or performing the construction contract. Believing that the December 27, 2002, writing settled the matter, on January 30, 2003, TDI brought a motion to enforce the agreement. (Code Civ. Proc., § 664.6.) The motion was supported by the declaration of Resnick, who said that he and Darren reached their agreement after stating their mutual desire to resolve the lawsuit. Referring to an attached copy of the December agreement, Resnick said he was "prepared to resolve this lawsuit" on those terms. Along with the motion, TDI brought an ex parte application for an order shortening time on the hearing on the settlement enforcement motion. As part of that application, TDI contended that granting the settlement enforcement motion would render one or both summary judgment motions moot and would leave TDI "in a position to dismiss the remaining defendant, Gary Cobrae, and proceed merely to enforce the terms of the settlement agreement . . . ."

Also on January 30, 2003, TDI sought and was granted an ex parte application to continue the Cobraes' summary judgment motions until March 26, 2003, in order to depose Darren and A-Line. That application was granted, with the depositions scheduled for March 7, 2003, and the hearing on the summary judgment motions pushed back until March 26, 2003. On March 6, 2003, however, counsel for TDI told counsel for Darren and A-Line that the depositions would not go forward.

Opposition to the Cobraes' summary judgment motions was due by March 12, 2003. On that date, TDI submitted a written opposition to Darren's motion, contending that the motions were rendered moot by the December 2002 settlement. As part of its opposition brief, TDI argued that it had "settled this case as to defendants Darren Cobrae and Gary Cobrae." The opposition was supported by the same Resnick declaration used to support TDI's motion to enforce the settlement agreement. No separate opposition to Gary's summary judgment motion was filed.

On March 19, 2003, the trial court denied TDI's motion to enforce the settlement agreement, finding that the December writing was too vague to be enforceable. On March 25, 2003, TDI filed with the trial court a request to dismiss Gary without prejudice. Also that day, TDI filed a writ petition with this court, asking us to reverse the trial court's ruling on its settlement enforcement motion. We issued a temporary stay of all proceedings that day. On April 23, 2003, we issued a notice of intent to issue the writ in the first instance. On May 20, 2003, Gary sought relief from the stay on the ground that he was not a party to the purported settlement agreement. We granted that request on July 3, 2003. On January 30, 2004, we issued a decision granting TDI's writ petition after concluding that the December 2002 document constituted an enforceable settlement agreement between TDI, Darren and A-Line. (*Tire Distributors, Inc. v. Superior Court* (Jan. 30, 2004, B165806) [nonpub. opn.].)

Freed from the stay of proceedings, Gary filed a motion on July 14, 2003, seeking: (1) to vacate TDI's request for dismissal of him; and (2) an order granting his unopposed summary judgment motion against TDI. The basis for this motion was the decision in *Cravens v. State Bd. of Equalization* (1997) 52 Cal.App.4th 253 [60 Cal.Rptr.2d 436] (*Cravens*), which held that a plaintiff's right to voluntarily dismiss a defendant might not apply if the defendant's pending summary judgment motion had ripened to the point where granting that motion was virtually guaranteed. In opposition, TDI argued that *Cravens* did not apply because TDI dismissed Gary in the belief that the dismissal was part of its December 2002 settlement with Darren and A-Line, not in order to avoid the grant of an unopposed summary judgment motion. On July 21, 2003, the trial court granted the motions on the ground that Gary was not a party to the December 2002 settlement agreement and because his unopposed summary judgment motion established his right to judgment. Judgment for Gary was entered August 20, 2003. This appeal followed.[2]

## DISCUSSION

■ A plaintiff has the right to dismiss a defendant or an entire action without prejudice before the commencement of trial. (Code Civ. Proc., § 581, subds. (b), (c).) When a dismissal has properly been filed, the trial court loses jurisdiction to act in the case. The right to dismiss is not unlimited, however. In addition to certain statutory limitations on that right, others have evolved judicially. (*Mossanen v. Monfared* (2000) 77 Cal.App.4th 1402, 1408–1409 [92 Cal.Rptr.2d 459] (*Mossanen*).)

---

[2] As a result of TDI's appeal, Gary's pending motion for attorney's fees has been stayed.

One such judicial exception arises when the action has reached or approached a determinative adjudication by way of a summary judgment motion. In *Mary Morgan, Inc. v. Melzark* (1996) 49 Cal.App.4th 765 [57 Cal.Rptr.2d 4] (*Mary Morgan*), the plaintiff filed an opposing brief as to only one of three pending summary judgment motions. At the hearing on the motions, the court issued a tentative ruling in favor of the defendants. The plaintiff asked for a continuance to obtain transcripts of recently conducted depositions that plaintiff contended would enable it to better oppose the motions. The continuance was granted, but instead of obtaining the transcripts and filing new or additional opposition papers, the plaintiff dismissed the action without prejudice. The defendants asked the court to reject the purported dismissal on the ground that the hearing had commenced and had been continued solely in order to allow the plaintiff to file further opposition. The trial court vacated the dismissal. The appellate court affirmed. By reading the dismissal statute in conjunction with the summary judgment statute, the appellate court concluded that it would be unfair to allow the dismissal to stand. Under that statute, the defendant was entitled to summary judgment in the absence of a showing of triable issues of fact by the plaintiff. The statute allowed a continuance for the limited purpose of conducting further discovery but did "not entitle the opposing party to defeat the motion by collateral maneuvers." (*Id.* at pp. 770–771.)

The plaintiff in *Cravens, supra,* 52 Cal.App.4th 253, did not file opposition to the defendants' summary judgment motion. Instead, the plaintiff filed a request for dismissal without prejudice one day before the scheduled hearing on the summary judgment motion. The defendants, who had no notice of the dismissal, appeared at the hearing, where summary judgment was granted. The appellate court affirmed. When an unopposed summary judgment motion establishes the absence of triable issues of fact to support plaintiff's claims, the trial court has discretion to grant the motion. (Code Civ. Proc., § 437c, subd. (b)(3).) Because the defendants' moving papers met that burden, they were entitled to judgment as a matter of law if no issues of disputed fact were raised. When the plaintiff failed to file opposition to the motion, "entry of summary judgment in favor of [defendants] became a formality which [plaintiff] could not avoid by the stratagem of filing a last minute request for dismissal without prejudice." (*Cravens, supra,* at p. 257.)

Gary contends that TDI's conduct falls squarely within the factual paradigm established by *Cravens* and *Mary Morgan*: after seeking a discovery continuance of the summary judgment hearing, but conducting no discovery and filing no opposition to Gary's motion, TDI dismissed Gary from the action just one day before the continued hearing date. TDI counters that those

decisions do not apply because the dismissal was intended to effectuate the settlement with Darren, not to evade the consequences of a summary judgment.[3]

■ In order to resolve this matter, we must first establish the proper standard of review. Although the *Cravens* court did not address this issue, it framed the question before it as whether the trial court had the power to grant summary judgment after a dismissal without prejudice had been entered. (*Cravens, supra,* 52 Cal.App.4th at p. 255.) Based on this, Gary contends that we must review the trial court's decision under the abuse of discretion standard. Post-*Cravens* decisions have held that where the facts are undisputed, the standard of review is de novo. (*Zapanta v. Universal Care, Inc.* (2003) 107 Cal.App.4th 1167, 1171 [132 Cal.Rptr.2d 842]; *Groth Bros. Oldsmobile, Inc. v. Gallagher* (2002) 97 Cal.App.4th 60, 65 [118 Cal.Rptr.2d 405] (*Groth Bros.*).) As we discuss *post,* every court to consider this issue has based its holding on the facts and circumstances surrounding the dismissal, evaluating whether allowing the dismissal to stand would be unfair or would endorse dishonest litigation tactics. Synthesizing these decisions, we conclude that abuse of discretion is the proper standard. The court's discretion does not permit it to act in an arbitrary or capricious manner, however. Instead, it must be guided and controlled by fixed legal principles and must be in keeping with the spirit of the law in order to subserve the ends of substantial justice. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066 [24 Cal.Rptr.2d 654].) Even under this standard, there is still a substantial evidence component. We defer to the trial court's factual findings so long as they are supported by substantial evidence, and determine whether, under those facts, the court abused its discretion. If there is no evidence to support the court's findings, then an abuse of discretion has occurred. (*Id.* at pp. 1065–1066.)

The legal principles that have evolved in this area tend to focus on the reasons for the dismissal and whether the plaintiff acted in good faith or merely for tactical reasons designed to prevent a defendant from obtaining an otherwise inevitable summary judgment. In *Mary Morgan,* the appellate court held that the defendants' right to obtain summary judgment had ripened to the point of inevitability, which the plaintiff could not avoid by "collateral maneuvers" such as a last-minute dismissal. (*Mary Morgan, supra,* 49 Cal.App.4th at pp. 770–771.) In *Cravens,* the appellate court characterized the plaintiff's eleventh hour dismissal as a "stratagem" designed to avoid summary judgment. (*Cravens, supra,* 52 Cal.App.4th at p. 257.) In *Groth Bros., supra,* 97 Cal.App.4th 60, the plaintiff sued on behalf of a corporation,

---

[3] TDI does not contend that Gary's summary judgment motion was insufficient or otherwise failed to negate the existence of material triable issues of fact.

naming former corporate officer Gallagher and others. After being ordered to post security on certain derivative causes of action against Gallagher, the plaintiff decided to file a first amended complaint that eliminated those claims. Gallagher demurred to that pleading. The plaintiff filed no opposition but instead tried to file a second amended complaint. That pleading was not allowed to be filed and the court later issued a tentative ruling sustaining the demurrers. At the hearing, the plaintiff told the court he had dismissed the first amended complaint without prejudice. Over the defendant's objections, the court decided it had lost jurisdiction and refused to issue a final ruling on the demurrers. A second amended complaint was filed, which prompted Gallagher to seek an order that the corporate plaintiff indemnify him pursuant to Corporations Code section 317, contending that the earlier dismissal without prejudice showed he would likely succeed on the merits. Gallagher appealed from that order. The appellate court held that the trial court erred by initially refusing to assert jurisdiction and rule on the demurrers even though the plaintiff had dismissed his first amended complaint. Citing *Mary Morgan* and other decisions, the court said that the policy underlying the limits on the plaintiff's right to dismiss was one of fairness to both the defendant and the judicial system. Permitting the dismissal to stand undermined not only the tentative ruling system and the defendant's statutory corporate indemnity rights, it also wasted judicial time and resources and promoted annoying and continuous litigation. (*Groth Bros., supra,* at pp. 66–73.)

In contrast, the court in *Mossanen, supra,* 77 Cal.App.4th 1402, held that a dismissal in the face of an unopposed summary judgment motion was justified by the circumstances. The plaintiff in *Mossanen* was a minor suing for medical malpractice. The trial court granted a motion to withdraw from representation that had been filed by the plaintiff's counsel. On the day that ruling took effect, the defendants brought a summary judgment motion. The plaintiff's guardian ad litem filed a dismissal without prejudice three weeks later. No opposition to the motion was filed and the trial court later granted the defendants' motion to vacate the dismissal and enter summary judgment under *Cravens.* The appellate court reversed, holding that *Cravens,* which it had decided three years earlier, was inapplicable. The *Mossanen* court explained that the basis of its decision in *Cravens* "was that a plaintiff who has failed to oppose a summary judgment motion cannot evade the consequence of the omission by an adroit dismissal of the lawsuit." (*Id.* at p. 1409.) Unlike *Cravens,* the dismissal by the guardian ad litem occurred because the guardian was not a lawyer and could not oppose the summary judgment motion without counsel. Her "predicament . . . was brought about by the trial court's ruling allowing previous counsel to withdraw even though it was

known that defendant was about to file a summary judgment motion." (*Id.* at p. 1410.)

As noted, *ante*, in our discussion of the standard of review, the common thread running through all of these decisions is the notion of fairness, which in turn depends on the plaintiff's motivation and intent in dismissing his complaint. (Compare *Zapanta v. Universal Care, Inc., supra,* 107 Cal.App.4th at p. 1173 [upholding dismissal filed before summary judgment opposition was due because there was no manipulation of the judicial process by delaying a court ruling on a defense motion in order to "sneak in" a voluntary dismissal], with *Gray v. Superior Court* (1997) 52 Cal.App.4th 165, 173 [60 Cal.Rptr.2d 428] [dismissal improper after hearing on partition had commenced before a referee].) When viewed through that prism, the factual similarities this case shares with *Mary Morgan* and *Cravens* become superficial.

It is undisputed that Resnick, acting on behalf of TDI, believed he had reached a settlement with Darren and A-Line. When those parties reneged and, along with Gary, filed summary judgment motions, TDI moved to enforce the settlement agreement. Even though the December 2002 agreement and Resnick's supporting declaration did not mention the effect of the settlement on Gary, Resnick did state that the settlement was intended to resolve the lawsuit. Regardless, the settlement's effect on Gary was raised in conjunction with the enforcement motion. In order to obtain a ruling before the hearing on the summary judgment motion, TDI asked to advance the hearing date on its enforcement motion. As part of that application, TDI argued that enforcement of the agreement would resolve the litigation with A-Line and Darren, leaving TDI "in a position to dismiss the remaining defendant, Gary Cobrae, and proceed merely to enforce the terms of the settlement agreement . . . ." As for the failure to oppose Gary's summary judgment motion, it is true that TDI did not file a separate opposition to that motion. However, in opposition to Darren's concomitant summary judgment motion, TDI argued that it had settled as to both Darren and Cobrae, that the summary judgment "motions" breached the agreement, and that filing substantive oppositions to the "motions" would cost thousands of dollars in unnecessary attorney's fees. Thus, although it did not separately oppose Gary's motion, TDI did address that motion as part of its opposition to Darren's motion, and on the same basis—that the settlement with Darren and A-Line rendered the motion moot.

In opposition to Gary's motion to vacate the dismissal, TDI's lawyer, Jeffrey Lipow, submitted a declaration concerning the events surrounding the decision to dismiss Gary. According to Lipow, attempts were made to postpone the summary judgment hearing in order to have TDI's motion to

enforce the settlement heard first. The pending summary judgment motions posed a dilemma for TDI, because filing costly oppositions would take away the benefits of the settlement. Once he learned that the enforcement motion had been denied, preparations began on the writ petition to this court. As part of that process, Gary was dismissed in order to show this court that TDI "had performed all executory obligations under the settlement agreement . . . ." According to Lipow, the dismissal was filed "in furtherance of the Settlement Agreement and to strengthen our position in the Petition for Writ of Mandate. The dismissal was not filed to avoid the consequences of having the Motion for Summary Judgment granted. We believed that the settlement agreement would ultimately be enforce[d]. If the [writ petition were denied], the [summary judgment] motion would have to be re-calendared and Plaintiff would have had an adequate opportunity to oppose the motion, which Plaintiff had every intention of doing if the settlement could not be enforced."

■ Nowhere in the record is there evidence from Darren or anyone else contradicting TDI's assertions that the settlement with Darren and A-Line would result in Gary's dismissal. Nor were any evidentiary objections raised to the declarations of Lipow or Resnick. In the face of this uncontradicted evidence, Gary relies solely on the contrary inferences that arise from the fact that he was not mentioned in either the settlement or Resnick's declaration.[4] Not only is that inference belied by the uncontradicted evidence, it is also belied by a common sense examination of the objective circumstances. It makes little or no sense to infer that Darren intended to settle as to only himself and A-Line, leaving his father as the sole remaining defendant. Nor does it make sense to believe that TDI intended such a result or had any reason to pursue Gary independent of Darren and A-Line. When combined with the direct evidence of TDI's intent, along with its timely and consistent assertions that it intended to dismiss Gary as part of the settlement, we hold that any contrary inferences drawn from the agreement's or Resnick's silence on that point are speculative at best. In short, on this record, there is no substantial evidence that TDI's dismissal of Gary was motivated by anything other than its belief that the dismissal was a term of the settlement with Darren and A-Line.[5] Because TDI dismissed Gary on that basis, and did so in an effort to end, not to continue the litigation, we hold that *Cravens* was not applicable and that the trial court erred in vacating the dismissal. As a result, the court lacked jurisdiction to grant summary judgment.

---

[4] Gary also makes much of the fact that he was not a party to the settlement agreement. TDI does not, however, contend that Gary was a party to the settlement. Instead, it contends that the settlement contemplated Gary's dismissal from the action, which served as a proper motivation under *Cravens*.

[5] We do not hold, however, that Gary's dismissal was actually a term of the settlement. Instead, we hold only that TDI believed that was so and requested the dismissal on that basis.

## DISPOSITION

For the reasons set forth above, the summary judgment for Gary Cobrae and the order vacating the dismissal of Gary Cobrae are reversed. The matter is remanded to the trial court with directions to reinstate the dismissal of Gary Cobrae without prejudice. Appellant to recover its costs on appeal.

Cooper, P. J., and Boland, J., concurred.

A petition for a rehearing was denied September 28, 2005, and respondent's petition for review by the Supreme Court was denied November 16, 2005.