Filed 8/7/25  Mansel v. Exodus Recovery CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ROSE MANSEL, Individually and as Successor in Interest, etc.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>EXODUS RECOVERY, INC., et al.,<br><br>Defendants and Respondents. | B336779<br><br>(Los Angeles County Super. Ct. No. 23STCV05574) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Law Offices of Akudinobi & Ikonte, Emmanuel C. Akudinobi, Chijioke O. Ikonte; and Samuel O. Ogbogu for Plaintiff and Appellant.

Callahan, Thompson, Sherman & Caudill, O. Brandt Caudill, Jr., Anthony V. Martinez and J. Michael Shin for

Defendants and Respondents Exodus Recovery, Inc., and Dr. Liliane L. Lebas.

No appearance for Defendants and Respondents Kedren Acute Psychiatric Hospital, Dr. Gul Ebrahim, and Isaac Camarena.

\* \* \* \* \* \*

In this consolidated appeal, Rose Mansel (appellant), on behalf of herself and the estate of her late husband, Harvey Huddleston Sr. (Huddleston), appeals from a judgment entered against her in this action for professional negligence, wrongful death, and related causes of action. Appellant sued Exodus Recovery, Inc., and Dr. Liliane L. Lebas (the Exodus respondents) and Kedren Acute Psychiatric Hospital (Kedren), Dr. Gul Ebrahim, and Isaac Camarena (the Kedren respondents)[1] following an alleged premature discharge of appellant's son, Alonzo Mansel (Alonzo), who thereafter had a psychotic breakdown and stabbed both appellant, injuring her, and Huddleston, killing him. The trial court sustained the Exodus respondents' demurrer to appellant's first amended complaint (FAC) without leave to amend and subsequently dismissed the entire action without prejudice.

Because Civil Code section 43.92 (section 43.92) operates to bar appellant's claims, we affirm the judgment in full.[2]

---

[1] The Kedren respondents have not filed a responsive brief in this appeal.

[2] Section 43.92, subdivision (a), provides: "There shall be no monetary liability on the part of, and no cause of action shall

2

## PROCEDURAL HISTORY

Appellant filed the original complaint in this matter in March 2023.  The complaint named the Exodus respondents and the Kedren respondents.

The Exodus respondents filed a demurrer on June 7, 2023, contending the allegations failed to state a cause of action in light of section 43.92.  The hearing on the demurrer was held on August 14, 2023, and the trial court sustained the demurrer with leave to amend.

Appellant filed the FAC in September 2023.  On October 16, 2023, the Kedren respondents filed an answer to the FAC.  The Exodus respondents filed a demurrer to the FAC on the same grounds as their first demurrer.  The demurrer was heard on December 6, 2023.  The trial court took the matter under submission and later issued a ruling sustaining the demurrer without leave to amend.  The court also ordered the FAC dismissed without prejudice.[3]

---

arise against, any person who is a psychotherapist . . . in failing to protect from a patient's threatened violent behavior or failing to predict and protect from a patient's violent behavior except if the patient has communicated to the psychotherapist a serious threat of physical violence against a reasonably identifiable victim or victims."

[3]     While the Kedren respondents did not file a demurrer, they sent a letter to appellant asking that she dismiss the entire action given the court's ruling as to the Exodus respondents' demurrer.  The Kedren respondents expressed their intention to file a motion for judgment on the pleadings, but felt it was not a good use of judicial resources given the court's ruling as to the Exodus respondents.  Instead, they made a Code of Civil

On December 12, 2023, the court held a hearing on appellant's ex parte application for clarification of the minute order. On December 18, 2023, the court issued a ruling denying the ex parte order for clarification and ordering judgment entered in favor of the Exodus respondents and for costs of $495.

On February 5, 2024, appellant filed her notice of appeal.[4]

## FACTUAL ALLEGATIONS

The FAC alleged Alonzo Mansel was arrested for burglary on June 19, 2021. Prior to his arrest, Alonzo was living by himself in the City of Hawthorne, California.[5] On June 22, 2021, he was ordered to undergo mental evaluation because of disturbing psychotic behavior during his arraignment. Based on Alonzo's psychiatric evaluation, on November 1, 2021, the court recommended Alonzo be admitted to LAC-USC Medical Center for observation and monitoring due to his disturbing psychotic behavior. Among the disturbing psychotic behavior was Alonzo's admission he heard voices that tell him to hurt or kill someone close to him.

---

Procedure section 998 offer to resolve the case for waivers of costs and malicious prosecution claims in exchange for dismissals with prejudice.

[4] Appellant initially submitted two opening briefs in this appeal, one addressing the trial court's sustaining of the Exodus respondents' demurrer without leave to amend, and the second addressing the court's dismissal of the FAC as to the Kedren respondents. This court ordered appellant to file a single consolidated brief, which appellant has done.

[5] There are no allegations as to Alonzo's age, but there are also no allegations that Alonzo was a juvenile.

4

On November 2, 2021, Alonzo was transferred to Kedren. The social workers and doctors there knew of Alonzo's homicidal ideations, especially of hurting and killing loved ones. They also knew Alonzo had a "toxic relationship" with his stepfather, the decedent. In light of Alonzo's homicidal ideations and the toxicity of his relationship with his stepfather, in a meeting on November 15, 2021, it was planned that when Alonzo was discharged from Kedren he would be discharged to a housing program under the "Family Service Partnership."

On December 12, 2021, Alonzo voluntarily agreed to remain at Kedren pending his hearings. In a December 22, 2021 court appearance, Alonzo agreed to remain under the care of health care workers due to his disturbing psychotic behavior until his next court appearance on January 12, 2022.

After the December 22, 2021 hearing, appellant received a call from respondent Camarena, who said Alonzo would be discharged that day. Appellant protested the discharge and pleaded with Camarena and others not to discharge him to her care. The management of Kedren, headed by respondent Dr. Ebrahim, disregarded her pleas and proceeded to discharge Alonzo.

Alonzo was taking several medications upon discharge, one of which was Aristada for schizophrenia and psychosis, with an injection due date of January 6, 2022. On January 5, 2022, appellant took her son to Exodus Recovery, one of the facilities listed in Alonzo's discharge and aftercare plan. Appellant and Alonzo were seen there by respondent Dr. Lebas. During the visit, Alonzo verbalized, "I feel I should go back to the mental hospital." He verbalized hearing voices and repeated the ideation of hurting loved ones, which was accompanied by constant pacing and talking to himself, a behavior he had earlier exhibited in the

waiting room that scared the nurses. Dr. Lebas ignored Alonzo's comments even after appellant drew her attention to them.

After prescribing certain medications, Dr. Lebas promised to call the drugstore whose address and phone number appellant provided with a prior authorization report (PAR) for the Aristada intramuscular injection. Dr. Lebas did not make the call on January 6, 2022. On January 7, 2022, upon inquiry, the pharmacist at the drugstore informed appellant that she was frustrated with Dr. Lebas who, after keeping her on hold for over an hour, told her she did not have time to complete the PAR and would get to it when she had time.

On January 7, 2022, appellant went to Exodus Recovery in Redondo Beach where she met with Jacqueline Arlo, the center's director of social services. Appellant informed Arlo of an increase in Alonzo's psychotic behavior and requested Arlo admit him back to the hospital or call Dr. Lebas. Arlo declined to honor either of the requests.

On January 9, 2022, appellant again followed up with the pharmacy and was informed Dr. Lebas had yet to complete the PAR.

On January 11, 2022, following a psychotic breakdown, Alonzo stabbed his stepfather Huddleston to death. He also stabbed appellant on the neck and hands, inflicting severe injuries.

## DISCUSSION
### I. Applicable law and standards of review
#### A. *Demurrer*
We review a ruling sustaining a demurrer de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law. (*Kan v. Guild*

6

*Mortgage Co.* (2014) 230 Cal.App.4th 736, 740.) "We give the complaint a reasonable interpretation, assuming that all properly pleaded material facts are true, but not assuming the truth of contentions, deductions, or conclusions of law." (*Ibid.*)

We need not accept the trial court's reasons for sustaining the demurrer, "as it is the ruling, not the rationale, that is reviewable." (*Kan v. Guild Mortgage Co., supra,* 230 Cal.App.4th at p. 740.)

When a demurrer is sustained without leave to amend, we must determine whether there is a reasonable probability the complaint could be amended to cure the defect. (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 458.) We review the trial court's decision on this issue for abuse of discretion. (*Ibid.*) To satisfy the burden of showing a reasonable probability of amendment, the appellant "'"must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading."'" (*Ibid.*)

**B.** *Dismissal without prejudice*

As to the Kedren respondents, the trial court dismissed the entire action without prejudice. We review the trial court's action for abuse of discretion. (*Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 544.) The court's action must be "guided and controlled by fixed legal principles and must be in keeping with the spirit of the law in order to subserve the ends of substantial justice." (*Ibid.*) In evaluating the dismissal, we consider "the facts and circumstances surrounding the dismissal." (*Ibid.*)[6]

---

[6] We decline to apply the de novo standard, as suggested by appellant. The cases cited by appellant in support of her request

7

## II. Appellant failed to allege a specific threat against a reasonably identifiable victim

Pursuant to section 43.92, appellant may not maintain her causes of action against the Exodus respondents or the Kedren respondents unless she has alleged "the patient has communicated to the [respondents] a serious threat of physical violence against a reasonably identifiable victim or victims." (§ 43.92, subd. (a).)  Because of her failure to make such an allegation in this matter, all of appellant's causes of action fail as a matter of law.

Appellant argues that, reading the FAC as a whole, Alonzo's homicidal ideation of hurting or killing loved ones is very clear.  That is not the standard.  The legal requirement is a serious threat of physical violence against a reasonably identifiable victim or victims.  Per the allegations of the FAC, Alonzo never made such a threat.  While at Exodus, he told Dr. Lebas he felt he should go back to the mental hospital.  He "verbalized hearing voices and repeated the ideation of hurting loved ones."[7]  He engaged in the frightening behavior of constant pacing and talking to himself.  There are no allegations that Alonzo threatened to kill or hurt his mother or stepfather.

---

that we apply the de novo standard of review are distinguishable. (*Herbst v. Swan* (2002) 102 Cal.App.4th 813, 816 [applying de novo standard of review to question of constitutionality of statute]; *Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 392 [finding court's failure to exercise discretion is an error of law].)

[7]    We find appellant's discussion of the term "loved ones" irrelevant in the absence of a serious threat of physical violence against a reasonably identifiable victim.

8

As to the Kedren respondents, there are no allegations of any words spoken by Alonzo. Appellant protested Alonzo's release from the mental hospital, but there are no allegations concerning any verbalization from Alonzo. Appellant alleges the Kedren respondents knew of Alonzo's "admission that he hears voices and the voices tell him what [to] do amongst which is hurting someone close to him, including killing." There is no allegation Alonzo ever made a serious threat in the presence of any of the Kedren respondents against a reasonably identifiable victim.

Section 43.92 bars appellant's causes of action for professional negligence, wrongful death, the survival action, and the claim for negligent hiring and supervision, because appellant has failed to allege a serious threat of physical violence against a reasonably identifiable victim.[8]

## III. Demurrer as to professional negligence/medical malpractice claim

Appellant's first cause of action is for professional negligence against all respondents. Section 43.92 encompasses causes of action for professional negligence arising out of a patient's violence, as it provides "no cause of action" shall arise against a psychotherapist in failing to protect from a patient's threatened violence, except in the narrow circumstances set forth

---

[8] Appellant does not argue in her opening brief she should have been granted leave to amend the FAC. In her reply brief, she asks for leave to amend "once the defects in their pleading, if any, is pointed out." As it is appellant's burden to identify ways in which her complaint could be amended (*Rosen v. St. Joseph Hospital of Orange County, supra*, 193 Cal.App.4th at p. 458), we do not address the trial court's order declining to allow amendment.

in the statute. However, both parties discuss this cause of action separately, presenting conflicting positions on the question of whether a psychotherapist owes a duty to a nonpatient. We briefly address the parties' arguments below, and conclude a psychotherapist owes no such duty in the case of a patient's violence except for the limited circumstances permitted by the statute.

The elements of a medical malpractice claim are (1) the duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage. (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 468, fn. 2.) The element at issue in connection with the Exodus respondents' demurrer is duty. Appellant asserts in her first cause of action that respondents owed appellant a duty of care in the care, treatment and management of her son's psychiatric condition.

Apart from the exception set forth in section 43.92, respondents did not owe a duty of care to appellant, the mother of their patient. (*Calderon v. Glick* (2005) 131 Cal.App.4th 224, 233 [psychotherapist does not owe a duty of care to third parties who suffer reasonably foreseeable harm as a result of therapist's negligent treatment of patient]; see *Trear v. Sills* (1999) 69 Cal.App.4th 1341, 1348 [no duty on the part of a therapist to parent of patient].) Medical and mental health professionals owe a duty of care to their patients. "It long has been held that an essential element of a cause of action for medical malpractice is a physician-patient relationship giving rise to a duty of care." (*Mero v. Sadoff* (1995) 31 Cal.App.4th 1466, 1471.) "The duty of care that psychotherapists owe to their patients is sufficient to

10

deter them from committing acts of professional malpractice." (*Calderon, supra*, at p. 234.)  "[W]hen the negligence is alleged to have occurred during the medical treatment of [a] child, the defendant's conduct is directly solely at the child . . . and not at the parent." (*Schwarz v. Regents of University of California* (1990) 226 Cal.App.3d 149, 168, citation omitted.)  "That a third party . . . suffers an adverse consequence does not mean the defendant's conduct is directed at the third party." (*Id.* at p. 163.)

The cases appellant cites do not convince us she can maintain a cause of action for professional negligence against Alonzo's psychiatric health care providers in this matter. Appellant cites *Hedlund v. Superior Court* (1983) 34 Cal.3d 695, in which a woman and her minor child sued a psychologist after the psychologist's patient shot the woman in the presence of her minor son.  The *Hedlund* court recognized a duty "to persons in close relationship to the object of a patient's threat." (*Id.* at p. 706.)  However, *Hedlund* was superseded by the enactment of section 43.92, which the Legislature enacted in response to *Hedlund* and *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 (*Tarasoff*).[9]  (See *Regents of University of California v. Superior Court* (2018) 29 Cal.App.5th 890, 903.)

In *Ewing v. Goldstein* (2004) 120 Cal.App.4th 807 (*Ewing*), the court explained the Legislative history of section 43.92.  The court noted the bill was "introduced in response to [*Hedlund* and

---

[9]     In *Tarasoff*, a patient confided to his psychotherapist his intent to kill an unnamed but readily identifiable girl.  The therapist notified campus police and recommended the patient be involuntarily committed.  However, police released the patient, and he killed the girl.  The Supreme Court rejected the therapist's contention that he had no duty to the girl because she was not his patient. (*Tarasoff, supra*, 17 Cal.3d at pp. 432–433.)

11

*Tarasoff*] and in recognition of the problems posed to the mental health profession if therapists were required to predict a patient's violence." (*Id.* at p. 815.) Section 43.92 was intended "'to limit the psychotherapists' liability for failure to warn to those circumstances where the patient has communicated an "actual threat of violence against an identified victim", and to "abolish the expansive rulings of *Tarasoff* and *Hedlund* . . . that a therapist can be held liable for the mere failure to predict and warn of potential violence by his patient."'" (*Ewing, supra*, at p. 816, quoting Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1133 (1985–1986 Reg. Sess.) May 14, 1985.) In *Ewing*, summary judgment for the therapist was reversed because the patient, a police officer with access to weapons, had expressed that he was considering suicide and considering causing harm to his ex-girlfriend's new boyfriend. The following day, the patient murdered his ex-girlfriend's new boyfriend and committed suicide. This circumstance fell within the exception created by section 43.92 because the patient reasonably identified the individual he intended to harm.

Appellant also cites *Williams v. Superior Court* (1994) 30 Cal.App.4th 318, which involved the application of Code of Civil Procedure section 425.13 in a case of professional negligence brought by a phlebotomist against a health care provider.[10] The case does not discuss section 43.92 and does not support appellant's position that she can properly bring a professional negligence claim against her son's mental health care provider under the circumstances of this case.

---

[10] Code of Civil Procedure section 425.13 limits claims for punitive damages in actions for professional negligence.

12

*Reisner v. Regents of University of California* (1995) 31 Cal.App.4th 1195 is also distinguishable. In *Reisner*, a 12-year-old girl received a blood transfusion. Although her doctor discovered the following day the blood she received was contaminated with HIV antibodies, the doctor never told the girl or her parents about the tainted blood. (*Id.* at p. 1197.) Several years later, after her death, the girl's intimate partner sued the girl's doctor. The court of appeal reversed the trial court's determination that the doctor and other defendants owed no duty to the third party plaintiff. Relying heavily on *Tarasoff*, superseded in part by section 43.92, the *Reisner* court determined "[w]hen the avoidance of foreseeable harm to a third person requires a defendant to control the conduct of a person with whom the defendant has a special relationship (such as physician and patient) or to warn the person of the risks involved in certain conduct, the defendant's duty extends to a third person with whom the defendant does not have a special relationship." (*Reisner, supra*, at p. 1198.) As set forth above, section 43.92 has limited the duty to warn of violence in the psychotherapist-patient context to such circumstances where the threat is "a serious threat of physical violence against a reasonably identifiable victim or victims." (§ 43.92, subd. (a).) As set forth above, no such threat is alleged in this case.

Finally, *Bragg v. Valdez* (2003) 111 Cal.App.4th 421 is also distinguishable. The case held "a treating psychiatrist who releases a patient simply because that patient has no insurance, when that patient has been involuntarily committed under the Lanterman-Petris-Short Act (LPS Act) as a danger to himself and others, may be liable to the patient and any person that patient injures." (*Id.* at p. 425, fn. omitted.) The relevant immunities for involuntary commitment are found in Welfare and Institutions

Code sections 5154 and 5259.3. The *Bragg* court reversed the trial court's sustaining of the defendants' demurrer on the grounds that "the immunity applies as long as the psychiatrist, based upon his own personal observations, believes the person is no longer a danger. . . . Here, of course, the allegation is that defendants made their decision not on the fact he was no longer a danger, but instead on the fact he was not insured." (*Id.* at p. 433.) The *Bragg* court acknowledged section 43.92 "states what it means and means what it says: There is no duty to warn unless the patient has made a specific threat against a specific identifiable person." (*Id.* at p. 434.) However, the *Bragg* court found section 43.92 inapplicable, noting "What we have in this complaint is an alleged failure to do one's duty under the involuntary commitment procedures of the LPS Act." (*Id.* at pp. 434–435.)

Appellant has failed to convince this court she may maintain a cause of action for professional negligence against Alonzo's health care providers in this matter.[11]

## IV. Dismissal

As to the Kedren respondents, the trial court dismissed the entire action without prejudice. The court's exercise of this discretionary power must be guided by legal principles and must serve the ends of substantial justice. (*Tire Distributors, Inc. v. Cobrae, supra*, 132 Cal.App.4th at p. 544.) In evaluating the

---

[11] We decline appellant's suggestion to use the factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108, 113, superseded by statute on another point as set forth in *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 723, footnote 7, to resolve the issue of duty. In this matter, the question is resolved by section 43.92.

14

dismissal, we consider "the facts and circumstances surrounding the dismissal." (*Ibid.*)

Because section 43.92 bars all of appellant's causes of action, we find no error in the trial court's decision to dismiss the FAC without prejudice. We further find no error in the trial court's decision declining to clarify the reasons for its dismissal, as they were sufficiently discussed in the demurrer proceedings.

## DISPOSITION

The judgment is affirmed. The Exodus respondents are awarded their costs of appeal.

CHAVEZ, J.

We concur:

ASHMANN-GERST, Acting P. J.

RICHARDSON, J.

15