Filed 11/4/14  NMS Properties v. Jones CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NMS PROPERTIES et al., | B246167 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC432260) |
| CRAIG D. JONES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Judgment is affirmed; the post-judgment order awarding attorney fees to R&D is reversed.

Manly, Stewart & Finaldi, Morgan A. Stewart and Timothy A. Burnett for Plaintiffs and Appellants.

Callanan, Rogers & Dzida and Joseph S. Dzida for Defendants and Respondents.

The City of Santa Monica (City) requires that, when a developer builds a new market-rate housing project, the developer must supply a certain number of units, either on- or off-site, as affordable low-income housing. In this case, plaintiff and appellant N. Neil Shekhter,[1] the developer of a market-rate housing project, contracted with another developer, Craig Jones,[2] for the latter to provide the necessary affordable housing in an off-site project, to be located at 711 Colorado. The City approved the arrangement, and Jones executed and recorded a deed restriction on 711 Colorado, providing that the project would, in fact, be built and maintained as affordable housing. Subsequently, Jones failed financially; the affordable housing was never constructed. 711 Colorado was foreclosed upon by its lender, defendants and respondents, Robhana, Inc. and Charles Dunn Capital, Inc., as Trustee (collectively, R&D). With no affordable housing at 711 Colorado, Shekhter's market-rate housing project was in violation of the City's affordable housing requirements. Shekhter brought the instant action against R&D, arguing that R&D was bound by the deed restriction to construct the affordable housing project at 711 Colorado. The action proceeded to a court trial on Shekhter's

---

[1] Plaintiffs and appellants consist of Shekhter and several Shekhter-related entities: NMS Properties, Inc.; 15394NM, LLC; and 1548 LuxeNMS, LLC, formerly known as NMS/JSM San Lorenzo, LLC. Except where necessary, we refer to any and all such entities as "Shekhter."

[2] As with Shekhter, Jones's involvement in this transaction was through numerous entities he owned or controlled. Except where necessary, we refer to any and all such entities as "Jones."

cause of action for breach of contract.[3]  Specifically, the parties disputed whether the

language of the deed restriction imposed an affirmative duty on the owner of

711 Colorado to construct affordable housing on the property.  The trial court concluded

that no such duty was imposed.  The trial court further concluded that, even if such

a duty arose, the owner must have a reasonable time in which to construct the affordable

housing.  The trial court found that R&D had not yet had such a reasonable time, and

therefore concluded that R&D had not breached the deed restriction.  Substantial

evidence supports this conclusion.  We therefore affirm the trial court's judgment in

favor of R&D.  However, we reverse the trial court's post-judgment order awarding

R&D its attorney fees as the prevailing party on the deed restriction, as the attorney fee

clause in the deed restriction is limited to actions between the "parties" to that

document, and does not extend to actions brought by purported third party beneficiaries

such as Shekhter.

---

[3]     As we discuss below, Shekhter argued that R&D was bound by the terms of the deed restriction because the deed restriction constituted a covenant running with the land.  However, the cause of action pursued was for breach of contract, not for breach of a covenant running with the land.  While we believe this action more properly sounds in property law than contract law, our review of the relevant principles indicates that the trial court's resolution of the merits of the action was correct on either theory.

*FACTUAL AND PROCEDURAL BACKGROUND*

1.      *Overview of the City's Affordable Housing Program*

The City has enacted an affordable housing program, under which developers of multi-family residential projects must construct a certain amount of affordable housing.[4] (Santa Monica Ord. No. 9.56.020.)  The program applies to "Multi-Family Project Applicant[s]," which are defined as individuals or entities which seek "City development permits or approvals to develop . . . multi-family [residential] project[s]." (*Ibid.*)

Pursuant to ordinance, all multi-family project applicants shall comply with the affordable housing program by constructing affordable units on- or off-site.[5] (Santa Monica Ord. No. 9.56.020, subd. (a).)  We are concerned in this case with the off-site option.  In order to satisfy the off-site option, the "multi-family project applicant . . . shall agree to construct" a prescribed number of off-site affordable housing units.  (Santa Monica Ord. No. 9.56.060, subds. (a) & (b).)  The applicant shall "identify an alternate site suitable for residential housing which the project applicant either owns or has site control over (e.g., purchase agreement, option to purchase, lease) subject to City review . . . . "  (Santa Monica Ord. No. 9.56.060, subd. (c).)  We

---

**4**      Affordable housing is to be affordable to "very low," "low," or "moderate" income households.

**5**      Some multi-family project applicants may also choose to comply by paying the City an affordable housing fee or by dedicating land to the City.  (Santa Monica Ord. No. 9.56.020, subd. (b).)  There was some dispute in the record as to whether these options were available in the instant case.  As Shekhter chose to proceed with off-site affordable housing in this case, it is unnecessary to determine whether other options were available.

4

emphasize that the requirements of the ordinance are imposed on the "applicant" who wishes to obtain approvals for market-rate housing. That applicant is required to "agree to construct" the off-site affordable units, and to identify a site for such units which the applicant either owns or "has site control over."

Finally, the ordinance provides that the applicant's obligations shall be set forth in a deed restriction, approved by the City. The deed restriction, which discusses the details relating to the sale or rental of the affordable housing units, shall be in effect for at least 55 years. (Santa Monica Ord. No. 9.56.130.)

The City has adopted administrative guidelines for implementation of the affordable housing program (Guidelines).[6] Pursuant to the Guidelines, off-site affordable units and the market-rate project must be constructed simultaneously. In order to guarantee that the affordable units are, in fact, constructed, the City shall not grant a certificate of occupancy for the market-rate units until either a certificate of occupancy has been issued for the off-site affordable units; or all of the following conditions have been met: (1) a building permit has been issued for the affordable housing project; (2) construction has commenced on the affordable housing project; and (3) the developer provides the City with "an irrevocable letter of credit or similar financial instrument deemed acceptable by the City" in a predetermined amount. If the affordable units are not issued a certificate of occupancy within 18 months of the

---

[6] The Guidelines introduced into evidence at the trial in this matter were approved by the City Council in March 2009, long after the City approved the projects at issue in this case. Nonetheless, there was no suggestion at trial that these Guidelines did not apply to the transactions at issue, or that any prior version of the Guidelines differed in any material way from the 2009 Guidelines.

certificate of occupancy for the market-rate units, the letter of credit or other financial instrument "shall contain a provision allowing the City, in its discretion, to draw down on the letter of credit (i.e. convert the letter of credit to cash)."

In short, the City's ordinance and Guidelines contemplate that an applicant for approval of market-rate housing must agree to provide affordable housing, which may be provided at an off-site project. However, when the applicant agrees to do so, its obligations must be confirmed in a deed restriction. Moreover, the City's issuance of a certificate of occupancy for the market-rate project is dependent on certain progress being made toward completion of the off-site affordable housing project.

2.    *Shekhter's Market Rate Projects and Jones's Affordable Housing Project*

Shekhter and Jones were both property developers in the City. It was agreed that Jones would construct an affordable housing project at 711 Colorado, which would satisfy the affordable housing requirements of four different market-rate projects, one of which was owned by Shekhter. For clarity, we refer to this project as "Shekhter 1" (located at 1539 Fourth). A second of the projects was owned by an entity in which Shekhter and Jones had both invested. Ultimately, Shekhter would become the owner of this market-rate project. We will refer to it as "Shekhter 2" (located at 1548 Sixth).[7] The other two market-rate projects were owned by Jones.[8]

_____

[7]    However, as Shekhter 2 was not owned by Shekhter at the time the relevant documents were drafted, we focus our discussion only on Shekhter 1, until such time as Jones failed financially, and Shekhter took control of Shekhter 2.

[8]    This is something of an oversimplification. 711 Colorado was not the only affordable housing project Jones was constructing; Jones was constructing other

6

It was agreed that, once 711 Colorado was completed as an affordable housing project, Jones would sell it to Shekhter. Indeed, Shekhter paid a $500,000 non-refundable deposit toward the purchase of 711 Colorado. Moreover, Shekhter paid Jones $800,000, on behalf of Shekhter 1, toward the cost of constructing the affordable housing at 711 Colorado – as the 711 Colorado project would satisfy the affordable housing requirements of Shekhter 1.

We pause here to consider this arrangement in terms of the City's affordable housing requirements. 711 Colorado was to satisfy the affordable housing requirements for market-rate projects owned by two different developers. In order for those developers to obtain approvals for the market-rate projects, as "applicants" under the City's ordinance, they *each* were required to establish ownership of, or site control over, 711 Colorado. Jones established ownership because he did, in fact, own 711 Colorado. Shekhter established site control by the fact that he had executed an agreement to purchase 711 Colorado once the affordable housing had been constructed. The City clearly accepted this as sufficient; it issued approvals for all of the market-rate projects (both Jones-owned and Shekhter-owned) which intended to satisfy their affordable housing obligations by off-site construction at 711 Colorado.[9]

_____

affordable housing projects which were to provide the necessary off-site affordable housing for numerous other market-rate projects, some of which were also owned by Shekhter. For simplicity, however, we focus only on 711 Colorado.

[9] In hindsight, we question whether Shekhter's agreement to purchase 711 Colorado *once the affordable housing was completed* constituted sufficient site-control within the meaning of the City's ordinance. Because Shekhter's obligation to actually complete the purchase and take control of the property would not arise until the affordable housing was completed at 711 Colorado, Jones's failure to complete the

3. *The Deed Restriction on 711 Colorado*

The City's affordable housing program provided that its obligations were to be set forth in a deed restriction.[10] There are several provisions of the deed restriction for 711 Colorado that are at issue in this case.

Preliminarily, it is important to identify the parties to the deed restriction. They are: (1) the City; (2) JSM Construction, Inc., referred to as the "Developer" in the deed restriction, and whom we shall refer to as "Jones Construction"; and (3) JSM Modena, LLC, referred to as the "Owner" in the deed restriction, and whom we shall refer to as "Jones Owner." We have chosen these names in order to clarify the identity of the parties to the deed restriction, and to emphasize that the only parties to the deed restriction were the City and Jones entities. Jones Owner was identified as the owner of 711 Colorado; Jones Construction was identified as the developer of 711 Colorado.

Next, the deed restriction imposed a burden on Jones Construction and Jones Owner to "provide and maintain" 26 affordable housing units at 711 Colorado.[11] The

project resulted in Shekhter never actually obtaining ownership of the property, despite his purchase agreement.

[10] Specifically, the ordinance provides: "Prior to the issuance of a building permit for a project meeting the requirements of this Chapter by providing affordable units on-site or off-site, the multi-family project applicant shall submit deed restrictions or other legal instruments setting forth the obligation of the applicant under this Chapter for City review and approval." (Santa Monica Ord. No. 9.56.130.) We emphasize that the deed restriction focuses on the *obligation of the applicant*, that is, the developer of the multi-family market-rate project who agrees to satisfy its responsibilities under the affordable housing ordinance with on- or off-site affordable housing. With respect to the affordable housing for Shekhter 1 at 711 Colorado, one might expect to see Shekhter's obligations set forth in the deed restrictions for both of those properties. However, the deed restriction for Shekhter 1 makes no reference to affordable housing at all; and, as we will discuss at length, the deed restriction for 711 Colorado discusses only Jones's obligations, not Shekhter's.

8

deed restriction imposed specific burdens regarding the rental of the affordable units, for the life of project, which must be at least 55 years.

The market-rate projects whose affordable housing obligations are to be satisfied by 711 Colorado, including Shekhter 1, are identified in the deed restriction. However, it is important to note that the owners or developers of those projects are *neither* identified as third party beneficiaries of the deed restriction, *nor* identified as co-obligors to provide and maintain the affordable housing at 711 Colorado. Instead, recitals in the deed restriction simply state that Jones Construction "wishes to construct" a market-rate residential project at Shekhter 1 and that Jones Construction "wishes to meet" requirements of the administrative approval of that project by providing the necessary affordable housing at 711 Colorado.[12] In short, the deed restriction assumes

---

**11** The parties would dispute at trial whether *both* Jones Construction and Jones Owner were required to *both* provide and to maintain the affordable housing; or whether, in the alternative, Jones Construction (and its successors) were required to provide the affordable housing and Jones Owner (and its successors) were required to maintain it. We need not resolve the issue in this appeal. We note, however, that necessarily included in Shekhter's argument that both entities are subject to both obligations is the theory that *Jones Construction* agreed to maintain 711 Colorado as affordable housing *for 55 years, regardless of who owned the property*. We are skeptical that Jones Construction intended to accept this obligation.

**12** Strictly speaking, these recitals might not have been true. Shekhter testified at trial that he and his entities, not Jones, developed Shekhter 1. The fact that Shekhter's status as the developer of Shekhter 1 was not addressed in the deed restriction may be the result of a form deed restriction having been used. The deed restriction for 711 Colorado is similar to a form deed restriction found in the City's Guidelines for the affordable housing program. That form deed restriction addresses the situation of a developer who agrees to provide the affordable housing *on-site*. Presumably, the form can easily be modified to apply to a case where the developer agrees to provide the affordable housing off-site, *on a site which the developer also owns* – in both situations, the developer of the market-rate property is the same entity as the developer of the

9

that Jones Construction is the developer of both 711 Colorado and Shekhter 1; the document simply does not address the situation of a different developer for Shekhter 1.

The 711 Colorado deed restriction contains two provisions regarding enforcement. First, it states: "The covenants and conditions herein contained shall apply to and bind the heirs, successors and assigns of all the parties hereto and shall run with and burden the 711 Colorado Property for the benefit of the City, the public, and surrounding landowners, until terminated in accordance with the provisions hereof. [Jones Owner] shall expressly make the conditions and covenants contained in this Agreement a part of any deed or other instrument conveying any interest in the property." Second, it states, "Violation of this Agreement may be enjoined, abated or remedied by appropriate legal proceedings by the parties hereto, or their respective successors, heirs, and assigns. The general public shall be deemed a third party beneficiary of this Agreement having standing to enforce the terms of this Agreement in a court of competent jurisdiction."[13]

Finally, the deed restriction contains a prevailing party attorney fee clause, providing, "In the event of any controversy, claim or dispute between the parties hereto, arising out of or relating to this Agreement or breach thereof, the prevailing party shall

affordable housing. The use of the language of the form in the instant situation, where the owner of one of the market-rate projects (Shekhter) was *not* the owner of the affordable rate housing site (711 Colorado) made for, perhaps unintentional, misstatements of fact.

[13] Shekhter would originally assert standing as an intended third party beneficiary of the deed restriction (e.g., arguing that Shekhter 1 was specifically intended to be benefitted). Shekhter now disclaims that argument, stating that he brought suit "pursuant to the language conveying standing on the general public."

10

be entitled to recover from the losing party reasonable expenses, attorney's fees and costs."

4.    *Jones's Default and the Attempts to Save the Project*

The purchase and sale agreement, by which Jones was to sell the completed affordable housing project at 711 Colorado to Shekhter, was dated November 11, 2004. Jones and Shekhter anticipated that the 711 Colorado construction project would be substantially completed on or about March 31, 2007, and a certificate of occupancy would issue at that time. Escrow was to close within 60 days of the certificate of occupancy on 711 Colorado.

This time schedule was not met. Although construction was to be completed by March 31, 2007, construction had not yet begun by that date. Indeed, the deed restriction on 711 Colorado was not executed until September 21, 2007. There did not appear to be any concerns regarding this delay.[14] It is not clear when construction ultimately commenced on 711 Colorado. However, by August 2008, little, if any, construction was completed, and Jones was in financial trouble.

R&D was a private lender; it had loaned money to Jones in the past. On August 4, 2008, R&D loaned Jones $2.3 million, secured by a deed of trust on 711 Colorado.[15] The proceeds of the R&D loan discharged a preexisting loan (also

---

[14]    Indeed, the deed restrictions on Shekhter 1 were not executed until August 30, 2007, even though Shekhter had owned the property since 2004.

[15]    The note was for $3.2 million, but only $2.3 million was advanced.

11

secured by a deed of trust) in favor of another lender.  The R&D note provided for interest payments initially, with a balloon payment due October 6, 2009.

One of the Jones-owned market-rate projects which was to have its affordable housing off-site at 711 Colorado was nearing completion in early 2009.  Pursuant to the Guidelines, Jones was required to give the City a financial instrument which the City could draw against in the event the affordable housing was not completed within 18 months of the certificate of occupancy for the market-rate project.  In February 2009, Jones gave the City a note for $536,301.37, secured by a deed of trust on 711 Colorado, which the City accepted in satisfaction of this requirement.[16]  The deed of trust securing this note was junior to R&D's deed of trust.  In April 2009, a certificate of occupancy issued for the Jones-owned market-rate property.

According to Shekhter, construction ceased at 711 Colorado in May 2009.  That month, Shekhter and Jones modified their agreement for Shekhter's purchase of 711 Colorado.  Under the new agreement, Shekhter, not Jones, would be responsible to construct the affordable housing on 711 Colorado.  Jones would return Shekhter's $500,000 deposit, convey the property to Shekhter, assign to Shekhter the plans and permits, and pay Shekhter an amount sufficient to cover the excess of construction costs over $4 million.  Shekhter's total consideration was to assume Jones's $536,301.37 note in favor of the City.  The sale was to close five days after Shekhter indicated he was ready to close, but no later than November 1, 2009.  According to Shekhter, when he

---

[16]     The note was sufficient to satisfy the Guidelines' obligation for all four market-rate projects which were to have their affordable housing at 711 Colorado.

entered into this agreement, he was unaware that R&D had loaned substantial sums to Jones secured by a first deed of trust on the property.

The sale to Shekhter never closed. On October 30, 2009, Shekhter wrote Jones, indicating his readiness to perform. Shekhter was willing to proceed with the sale if Jones could provide title clear of the R&D deed of trust. This would prove impossible for Jones, who apparently was on the verge of financial ruin.

Jones failed to repay R&D when the note became due in October 2009. A default was noticed in January 2010, and the matter proceeded to a trustee's sale. R&D obtained 711 Colorado at the trustee's sale by means of a credit bid of $1,000,000, in June 2010. There were no other bidders. The sale had the effect of wiping out the City's deed of trust on the property, as it was junior to R&D's deed of trust.

Another effect of the trustee's sale was to make R&D the successor to Jones Owner under the 711 Colorado deed restriction. The parties dispute what obligations, if any, are imposed on R&D as the successor to Jones Owner, but not Jones Construction. Shekhter would argue that R&D was required to construct the affordable housing in order to provide a contracted-for benefit to Shekhter 1, a purported third party beneficiary of the deed restriction. R&D agreed that, if it was to construct anything on the property, it was required to construct affordable housing.[17] However, it argued that the deed restriction did not require it to construct anything.

---

[17] Shekhter takes issue with this fact, arguing that R&D sought the right to construct *market-rate* housing on the 711 Colorado property. The evidence, consisting both of testimony from R&D and its correspondence with the City, is to the contrary. Admittedly, R&D thought it was unfair that *Shekhter* should benefit from R&D's

13

5.    *The Instant Action*

On February 24, 2010, after Jones had defaulted on the R&D note but before the trustee's sale, Shekhter brought the instant action. He alleged some 15 causes of action against Jones.[18] In April 2010, Shekhter named R&D as a Doe defendant, and filed a first amended complaint naming R&D in several causes of action. Specifically, Shekhter alleged that R&D knew or should have known of Shekhter's contract to purchase 711 Colorado from Jones prior to loaning money to Jones. Shekhter alleged that R&D recorded its deed of trust in violation of the Shekhter/Jones contract, and did so with the intent to defraud Shekhter out of his interest in 711 Colorado. Shekhter alleged that R&D conspired with Jones to "illegally usurp" Shekhter's rights to the property. Shekhter named R&D in several causes of action, including tortious interference with contract, and declaratory relief regarding the rights of ownership of, and title to, 711 Colorado. Shekhter also recorded a lis pendens on the 711 Colorado property.

In August 2010, Shekhter reached a settlement agreement with the City. By this time, Shekhter had taken over ownership of Shekhter 2 – a market-rate project initially

---

construction of affordable housing without paying R&D a subsidy, and wanted, instead, to accept subsidies from *other* market-rate housing developers who needed off-site affordable housing. But R&D did not argue that it had the right to build market-rate housing on 711 Colorado.

[18]    The City is not a party to the instant action. We understand that there are additional disputes pending, which may or may not have proceeded to litigation. Nothing that we say in this opinion should be read as having any bearing on the City's rights under the ordinance and documents at issue. We are concerned only with the dispute between Shekhter and R&D.

owned by both Shekhter and Jones, which, like Shekhter 1, was to satisfy its affordable housing requirement at 711 Colorado. Construction was complete at Shekhter 2, but the City declined to issue a certificate of occupancy, given the lack of affordable housing at 711 Colorado. The City had also threatened to revoke the previously-issued certificate of occupancy for Shekhter 1. Shekhter believed that he needed to satisfy his affordable housing obligation elsewhere, so that he could begin earning rental income at Shekhter 2, and would not lose his tenants at Shekhter 1. As a result, on August 26, 2010, Shekhter entered into an agreement with the City. Pursuant to this agreement, Shekhter agreed to provide the necessary affordable housing for Shekhter 1 and Shekhter 2 at another property Shekhter owned. Shekhter agreed to put the necessary affordable housing units at another project which was already in progress, and to keep such units there until he could complete an entirely new affordable housing project. Pursuant to the terms of the agreement, Shekhter was granted: 2 years to establish site control of a site for the new affordable housing project; three years to commence substantial construction of the new project; and 4.5 years for the new affordable housing project to be completed. Because of this agreement, the Shekhter 1 and Shekhter 2 projects were no longer dependent upon affordable housing being built at 711 Colorado.

R&D's demurrer to Shekhter's first amended complaint was sustained with leave to amend. Shekhter filed the second amended complaint, the operative pleading, on September 13, 2010. In addition to pursuing the previously-discussed causes of action, Shekhter added a cause of action for breach of contract against R&D. Specifically, the cause of action alleged that R&D breached the deed restrictions on 711 Colorado by not

15

developing "the required affordable housing units" as specified in the deed restriction. Shekhter argued that Shekhter 1 was a "named entit[y]" and "intended third party beneficiar[y]" of the 711 Colorado deed restriction. Shekhter sought specific performance of the deed restriction and damages for its breach. However, in light of Shekhter's settlement with the City, Shekhter would cease pursuing any claim for specific performance; he instead sought damages in the amount of $2.5 million – the cost of building the necessary affordable housing units under his settlement agreement with the City.[19]

---

[19]    A question arises as to whether a remedy in damages, as opposed to specific performance, was available to Shekhter at all. To the extent that Shekhter sought standing under the 711 Colorado deed restriction as a member of the public, the deed restriction provided that a member of the public had standing only to "enforce the terms" of the agreement, while a party to the agreement had standing to "enjoin[], abate[] or remedy" a violation. It certainly could have been argued that a remedy in damages is not available to a member of the general public, who can only sue to "enforce" the deed restriction. This issue is particularly apparent when we consider it in terms of property law. A deed restriction can be either a covenant running with the land or an equitable servitude. In California, a covenant running with the land is a statutory creation; only covenants that meet the statutory requirements run with the land. (*Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 353.) A covenant which does not meet the statutory requirements can be enforced only as an equitable servitude. (*Soman Properties, Inc. v. Rikuo Corp.* (1994) 24 Cal.App.4th 471, 484.) Civil Code section 1468 is the only statute which conceivably could apply to the 711 Colorado deed restriction. However, by the specific terms of that statute, it applies to an agreement "made by an owner of land with the owner of other land . . . to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee." (Civil Code, § 1468.) As Shekhter was not a party to the deed restriction, the deed restriction does not meet the statutory requirements of a covenant benefitting Shekhter's land. If that is so, Shekhter could only pursue enforcement of the deed restriction as an equitable servitude; that cause of action generally provides only an equitable remedy, not damages. (12 Witkin, Summary of California Law (10th ed. 2005) Real Property, § 440, p. 513.)

16

In March 2011, R&D moved for summary judgment or, in the alternative, summary adjudication of the issues. On June 7, 2011, Shekhter opposed the motion arguing, in part, that it was dismissing the great bulk of its causes of action against R&D, leaving only the breach of contract cause of action.[20] On June 8, 2011, Shekhter's request for dismissal, without prejudice, of these causes of action was filed. Dismissal was granted as requested. This had the result of eliminating the cloud on R&D's title caused by Shekhter's recording of the lis pendens; Shekhter no longer argued that he had a right to title to 711 Colorado. The only issue was whether Shekhter was entitled to damages. The court denied R&D's motion for summary judgment, and the case proceeded to a bench trial.

R&D was victorious at trial. The trial court concluded that Shekhter failed to establish his breach of contract cause of action. In pertinent part, the court found that: (1) pursuant to the deed restriction, 711 Colorado was to be used for affordable housing if it was to be used at all, but no construction was mandated; (2) pursuant to the deed restriction, if there is a duty to construct, that duty fell only on Jones Construction (and its successors), not Jones Owner (and its successors); and (3) if there was a duty on R&D to construct (which there was not), a reasonable time within which to perform much be implied, and R&D had not yet had a reasonable time in which to perform. Judgment was entered in favor of R&D. Shekhter filed a timely notice of appeal.

---

[20]     Shekhter also continued to pursue a cause of action for nuisance, regarding the ongoing state of disrepair at 711 Colorado. That cause of action is not at issue in this appeal.

17

6.      *Attorney Fees*

R&D then moved for attorney fees under Civil Code section 1717, as it was the prevailing party on Shekhter's breach of contract cause of action, and the 711 Colorado deed restriction contained an attorney fee clause.  Additionally, R&D represented that its note (to Jones) and deed of trust had also contained attorney fee clauses, and argued that it had prevailed on Shekhter's causes of action which had challenged its note and deed of trust, entitling it to attorney fees as the prevailing party on those causes of action as well.

The matter was briefed at length.  Shekhter argued that R&D could not recover its attorney fees because Shekhter would not have been entitled to recover his fees had he prevailed.  Shekhter argued that he had brought suit only as a third party beneficiary, who was not entitled under the 711 Colorado deed restriction to recover attorney fees.  As to R&D's argument regarding its note and deed of trust, Shekhter argued that, as he had voluntarily dismissed all causes of action relating to R&D's note and deed of trust, there was no prevailing party on those causes of action, and attorney fees therefore could not be recovered.  (Civ. Code, § 1717(b)(2).)

The trial court ultimately awarded attorney fees to R&D, concluding that R&D was the prevailing party on the cause of action alleging breach of the 711 Colorado deed restriction.  Although the court considered the issue to be "a close call," the court concluded that the language of the 711 Colorado deed restriction specifically mentioned the Shekhter 1 and Shekhter 2 projects, which was sufficient to give the owners of those projects standing to recover attorney fees should they successfully enforce the deed

18

restriction. As such, R&D could recover its attorney fees as the prevailing party in Shekhter's action. The court awarded R&D all fees it sought, even those pertaining to causes of action which had been dismissed, on the basis that all of the causes of action were interrelated and the attorney work could not be allocated among them. A new judgment was entered, incorporating the award of attorney fees. Shekhter filed a second notice of appeal.

## ISSUES ON APPEAL

On the merits, Shekhter contends the trial court erred in concluding, on the evidence, that R&D did not have an affirmative duty to construct affordable housing under the 711 Colorado deed restriction. R&D disagrees, and further argues that the trial court correctly concluded that even if R&D had such a duty, it must have a reasonable opportunity in which to perform, which it was not granted. We conclude that R&D is correct on this latter point; as such, R&D did not breach the contract. We therefore need not address Shekhter's arguments regarding R&D's duty under the deed restriction. As to attorney fees, however, Shekhter correctly argues that the attorney fee clause applies only to "parties" to the 711 Colorado deed restriction.

## DISCUSSION

1. *Standard of Review*

"When considering a claim of insufficient evidence on appeal, we do not reweigh the evidence, but rather determine whether, after resolving all conflicts favorably to the prevailing party, and according the prevailing party the benefit of all reasonable inferences, there is substantial evidence to support the judgment." (*Scott v. Pacific Gas*

19

*& Electric Co.* (1995) 11 Cal.4th 454, 465.)  In reviewing the evidence on appeal, all conflicts must be resolved in favor of the judgment, and all legitimate and reasonable inferences indulged in to uphold the judgment if possible.  When a judgment is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the judgment.  When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.  (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571; *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.)

      2.     *Time to Construct*

          a.     *A Reasonable Time is Implied*

Assuming, but not deciding, that R&D owed a duty to Shekhter under the 711 Colorado deed restriction to *construct* affordable housing, the question arises as to the time in which R&D must construct the housing.  R&D argued that it must have a reasonable time in which to do so.  R&D relies on Civil Code section 1657, which provides:  "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed."  In contrast, Shekhter argues that the deed restriction is not, in fact, silent as to the time of performance, and it contains an *implied* term requiring R&D to complete construction within 18 months of the issuance of a certificate of occupancy on any of the market-rate projects for which 711 Colorado was to provide the affordable housing.

Shekhter's argument is unavailing. First, Shekhter argues that the 18-month term is, in fact, implied – conceding, as he must, that the 711 Colorado deed restriction is silent on the point. Second, Shekhter argues that the 18-month term is implied due to language in the Guidelines. Yet the Guidelines are simply guidelines; they do not have the force of law of a controlling ordinance. Moreover, there is no language in the deed restriction incorporating the requirements of the Guidelines by reference. Third, the Guidelines themselves do not impose an 18-month period of construction. The Guidelines provide that *if* construction of the off-site affordable housing is not completed within 18 months of the certificate of occupancy on the market-rate property, *then* the City may draw down on the letter of credit supplied by the developer. In other words, the Guidelines do not provide that the construction must be completed within 18 months of the certificate of occupancy, they simply provide a remedy for the City if the construction is delayed beyond that point. Fourth, even to the extent the Guidelines apply at all, they provide that the City Manager has the discretion to extend the 18-month period by an additional 6 months. Taken together, this evidence establishes that the 711 Colorado deed restriction did not contain a requirement that construction of the affordable housing be completed within 18 months of the issuance of a certificate of occupancy for one of the market-rate projects. Thus, the law implies a reasonable time to construct the affordable housing.

    b.  *R&D Did Not Fail to Construct in a Reasonable Time*

Next we consider whether R&D had a reasonable time in which to construct affordable housing at 711 Colorado. R&D took title to the property in June 2010. By

21

this time, the existing administrative approval and building permit for 711 Colorado had expired, requiring R&D to start the approval process again. Moreover, Shekhter had already brought the instant action, and recorded a lis pendens, leaving R&D's title in doubt. Shekhter did not dismiss his challenges to R&D's title until June 2011. In August 2011, R&D obtained a new administrative approval to build affordable housing at 711 Colorado.[21] In December 2011, R&D obtained approval from the City's architectural review board, the next step prior to obtaining a building permit. By the time of trial, in May 2012, R&D had not yet obtained a new building permit. It offered testimony, without contradiction, that it would take at least six months to update the existing construction plans to comply with the current building code. In sum, although R&D had title to the property for just under two years; it only had *clear* title to the property for approximately 11 months.[22] During that time, it had obtained administrative approval and architectural approval, and was revising the plans to apply for a new building permit.

In determining whether 11 months of clear title constitutes a "reasonable time" in which to take a property, with expired approvals, all the way through construction of an affordable housing project, we consider the evidence. The City's director of Housing and Economic Development testified that, for obtaining permits, one year is

[21]    R&D had applied for administrative approval in March 2011.

[22]    It appears reasonable for R&D not to have moved forward on the 711 Colorado project when its title was in doubt. R&D's consultant testified he had recommended that R&D not seek to have the administrative approvals reinstated until its title was actually clear. That R&D ultimately applied for the approvals *before* its title was clear indicates that it was proceeding diligently.

22

"aggressive" and two years is "reasonable." He further testified that it could reasonably take one or two years to construct an affordable housing project at 711 Colorado. In total, this evidence suggests that four years is a reasonable time to obtain permits and construct the project. While Shekhter testified that permits could be acquired faster,[23] and construction completed in an additional year, his own proposed construction schedules are much more in line with the City's testimony. In September 2011, Shekhter offered the City a written proposal for another affordable housing project, in which he offered the "proposed milestones" of beginning construction within 30 months of obtaining site control and completing construction within four and one-half years of site control. This confirms that a total time of at least four years from site control to complete construction is reasonable. Even Shekhter's settlement with the City provided him with a total of two and one-half years to proceed from site control of a new affordable housing project to completion of the project – far more than the 11 months in which R&D had clear title to 711 Colorado.

Shekhter did not establish that R&D had failed to construct the affordable housing in a reasonable time, given the time frame Shekhter believed was reasonable in his own proposals. Thus, substantial evidence supports the conclusion that R&D did not breach the 711 Colorado deed restriction.

---

[23] Shekhter testified that new permits could be acquired in 10 months, and that expired permits could have been renewed in only 3-4 months.

c.     *No Estoppel by Breach of the Implied Covenant*

For the first time on appeal, Shekhter argues that, regardless of whether R&D had a duty to construct the affordable housing at 711 Colorado, R&D breached the implied covenant of good faith and fair dealing in its conduct with respect to Shekhter. For the first time in its reply brief on appeal, Shekhter argues that R&D is *estopped* by its purported breach of the implied covenant to argue that it had an insufficient time to build the affordable housing. According to Shekhter, R&D breached the implied covenant by suggesting to the City that it withhold the certificate of occupancy on Shekhter 2 and revoke the certificate of occupancy on Shekhter 1.[24]

Preliminarily, this argument is waived. Arguments raised for the first time on appeal are considered waived. (*Steele v. Totah* (1986) 180 Cal.App.3d 545, 551-552.) This is particular true for arguments raise for the first time in a reply brief on appeal. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

Even were this argument not waived, it would be unsuccessful. " 'The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the

---

[24]     When R&D took title to 711 Colorado, it was prepared to construct affordable housing at the site, but wanted to obtain contributions from the market-rate properties which would have their affordable housing requirements satisfied by the project at 711 Colorado. Shekhter balked at this; he had already paid Jones $800,000 toward the construction of affordable housing at 711 Colorado, and felt he should not have to pay R&D a second time. Both R&D and Shekhter made proposals to the City for resolution of the dispute. R&D suggested that if the City withheld or revoked the certificates of occupancy for Shekhter 1 and Shekhter 2, this would give R&D a much stronger bargaining position with Shekhter. It represented to the City that it would, nonetheless, negotiate in good faith with Shekhter, and invited the City to act as an " 'honest broker' " in negotiations.

*benefits of the agreement actually made*.' [Citation.]" (*American Express Bank v. Kayatta* (2010) 190 Cal.App.4th 563, 570.) "The [implied] covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.' [Citation.]" (*Agosta v. Astor* (2004) 120 Cal.App.4th 596, 607.) Shekhter argues that R&D's act of suggesting to the City that it exercise its rights to withhold or revoke the certificates of occupancy on Shekhter 1 and Shekhter 2 (for failure to provide the promised affordable housing) somehow frustrates Shekhter's right to receive the benefits of the 711 Colorado deed restriction. But this is only a frustration of Shekhter's right to receive the benefits of the deed restriction if the deed restriction *actually gave Shekhter the benefit* that the affordable housing would be built on Shekhter's schedule – such that the Shekhter 1 and Shekhter 2 certificates of occupancy would not be in danger. In other words, Shekhter's argument on the implied covenant of good faith and fair dealing is simply a rephrasing of his argument that the 711 Colorado deed restriction imposed on R&D a duty to construct the affordable housing within 18 months of the first certificate of occupancy on a related market-rate project. We have already concluded there was no duty to do so; thus, R&D did not breach the implied covenant by suggesting that the City enforce its remedies against Shekhter when the 711 Colorado affordable housing was not timely constructed.

3. *Attorney Fees*

We review a determination of the legal basis for an award of attorney fees de novo as a question of law. (*California Wholesale Material Supply, Inc. v. Norm*

*Wilson & Sons, Inc.* (2002) 96 Cal.App.4th 598, 604.) "Attorney fees are not recoverable as costs unless a statute or contract expressly authorizes them. [Citation.]" (*Ibid.*)

a. *The 711 Colorado Deed Restriction*

In the instant case, R&D received an award of attorney fees as the party prevailing on the breach of contract cause of action, on the basis that the 711 Colorado deed restriction contained a prevailing party attorney fee clause. Shekhter, however, was not a signatory to the 711 Colorado deed restriction. We must therefore consider the circumstances in which a non-signatory to a contract may nonetheless be liable to pay attorney fees to a party prevailing on a cause of action based on the contract.[25]

A non-signatory plaintiff who sues under a contract as a third party beneficiary is liable for attorney fees to a prevailing defendant only if the non-signatory plaintiff would have been entitled to recover attorney fees had he prevailed. (*Whiteside v. Tenet Healthcare Corp.* (2002) 101 Cal.App.4th 693, 708.) "A third party beneficiary may enforce a contract made expressly for his or her benefit. [Citations.] It is also true that a party not named in the contract may qualify as a beneficiary under it where the contracting parties must have intended to benefit the unnamed party and the agreement reflects that intent. [Citation.] The party claiming to be a third party beneficiary bears the burden of proving that the contracting parties actually promised the performance

---

[25] To be sure, R&D is not a signatory to the 711 Colorado deed restriction either. However, R&D is the successor-in-interest to Jones Owner, a party, and there is no suggestion that R&D does not stand in Jones Owner's shoes for the purposes of the attorney fee clause.

26

which the third party beneficiary seeks. This remains largely a question of interpreting the written contract. [Citation.]" (*Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 680.)

In determining whether the alleged third party beneficiary plaintiff would have been able to recover attorney fees had that party prevailed, this appellate division focuses on the language of the contract, specifically including the attorney fee clause, to determine whether the parties intended to extend to the purported third party beneficiary the specific right to recover attorney fees. " 'A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. [Citations.] As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler. Permitting a third party to enforce a covenant made solely to benefit others would lead to the anomaly of granting him a bonus after his receiving all intended benefit.' [Citation.]" (*Sessions Payroll Management, Inc. v. Noble Construction Co., supra,* 84 Cal.App.4th at p. 680.)

The attorney fee clause in the 711 Colorado deed restriction states as follows: "In the event of any controversy, claim or dispute between the parties hereto, arising out of or relating to this Agreement or breach thereof, the prevailing party shall be entitled to recover from the losing party reasonable expenses, attorney's fees and costs." The language limits the right to attorney fees to any litigation "between the parties hereto." The parties to the 711 Colorado deed restriction are Jones Owner, Jones Construction

and the City.  Although R&D may be considered a successor to Jones Owner, Shekhter is not a party – or successor to a party – to the agreement in any way.  This language, limiting the right to attorney fees to disputes "between the parties hereto" very clearly excludes non-signatories from its coverage.  (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 896 [attorney fee clause applying to litigation " 'between the parties hereto' " plainly limits fees to litigation between signatories]; see also *Sessions Payroll Management, Inc. v. Noble Construction Co., supra,* 84 Cal.App.4th at p. 681 [use of the word " 'party' " in an attorney fee clause reflects an intent to exclude non-signatories].)  In other words, even if third party beneficiaries have some rights under the 711 Colorado deed restriction, the right to recover prevailing party attorney fees is not among those rights.

As such, Shekhter would not have been entitled to recover attorney fees had he prevailed.[26]  Under the principles of reciprocity, R&D may not recover its attorney fees from Shekhter.

---

[26]     There have been some cases which focus their attention not on the language on the attorney fee clause, but on whether the purported third party beneficiary plaintiff was simply *intended* to be benefitted by the contract to a sufficient degree to enable that plaintiff to recover attorney fees.  (See, e.g., *Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 969 [holding a creditor of one of the parties to the agreement was intended to be benefitted by an agreement which, although it did not specifically identify the creditor, expressly indicated an intention to compensate all of the party's creditors]; *Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 383 [finding a sublessee named in the lease, who could sue the lessor directly for breach of the implied covenant of quiet enjoyment, has a sufficient nexus to the lessor].)  R&D does not attempt to justify the award of attorney fees in its favor on the basis that the 711 Colorado deed restriction actually included an intention to benefit Shekhter.  Indeed, to successfully pursue this theory, R&D would have to establish not merely that Shekhter had *sought relief* as an intended third party beneficiary of the contract, but that

b. *The Note and Deed of Trust*

R&D argues that if it is not entitled to its attorney fees as prevailing party on the 711 Colorado deed restriction, it is entitled to its attorney fees as prevailing party on the causes of action implicating its note to Jones and deed of trust on the property. Shekhter correctly responds that there is no prevailing party on those causes of action, as they were voluntarily dismissed. (Civil Code, § 1717, subd. (b)(2); *CDF Firefighters v. Maldonado* (2011) 200 Cal.App.4th 158, 164-165.) R&D suggests that this rule should not apply in this case, because Shekhter voluntarily dismissed the causes of action without prejudice when R&D's motion for summary judgment was pending and it was clear that summary adjudication of the causes of action in R&D's favor would be granted. While it is true that a plaintiff's right to voluntarily dismiss may be limited when the action has reached a determinative adjudication by way of a summary judgment motion (*Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 542-543), the proper procedure is for the defendant to oppose the request for dismissal (*id.* at p. 543) and obtain a judgment on the merits. Once the causes of action have been voluntarily dismissed, Civil Code section 1717, subdivision (b)(2) provides that there is

---

he, in fact, *was* such a third party beneficiary. (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC, supra,* 162 Cal.App.4th at p. 899.) Shekhter was not named in the 711 Colorado deed restriction. The mere fact that the Shekhter 1 *property* was named in the deed restriction does not reflect an intent to benefit Shekhter – this is particularly true given that the deed restriction indicated that Jones Construction (a named party) was, in fact, the developer of Shekhter 1.

no prevailing party, regardless of when the dismissal was filed.[27] (*Marina Glencoe, L.P. v. Neue Sentimental Film AG* (2008) 168 Cal.App.4th 874, 878.)

## *DISPOSITION*

The judgment in favor of R&D is affirmed. The post-judgment order awarding attorney fees to R&D is reversed.[28] The parties shall bear their own costs on appeal.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

KUSSMAN, J.[*]

WE CONCUR:

KITCHING, Acting P. J.                    ALDRICH, J.

---

[27] In any event, even if R&D could challenge the dismissal at this point in the litigation, R&D has wholly failed in establishing that, had Shekhter not dismissed the causes of action, summary adjudication of those causes of action in R&D's favor was a matter of inevitability.

[28] To the extent the judgment incorporated the attorney fee order, the judgment is modified to delete the award of attorney fees, and is otherwise affirmed.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.