Filed 5/23/24  Taleb v. Thurman Interim Cal. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LILI TALEB et al., | B320269 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 19STCV21671) |
| THURMAN INTERIM CALIFORNIA, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment and postjudgment orders of the Superior Court of Los Angeles County, Barbara Scheper, Judge. Affirmed.

Lili Taleb and Knarik Taleb, in pro. per., for Plaintiffs and Appellants.

Travis M. Poteat for Plaintiff and Appellant Lili Taleb.

Wilke Fleury, George A. Guthrie and Kathryne E. Baldwin for Defendant and Respondent.

————————

Lili Taleb and her mother Knarik Taleb (collectively, the Talebs)[1] lived in an apartment in a complex owned by Thurman Interim California, Inc. (Thurman). Based on allegations that someone was stealing their electricity, the Talebs sued Thurman. But when an inspection of the property revealed that nobody was stealing electricity, the Talebs sought leave to amend their complaint to allege that their high electricity bills were instead due to a stray current and that their apartment was uninhabitable due to, for example, mold and infestation. The trial court denied leave to amend, finding that the proposed amendment was untimely and would prejudice Thurman. The trial court then granted summary judgment for Thurman because the Talebs failed to submit a timely separate statement. On appeal, the Talebs make numerous contentions: the trial court abused its discretion by denying them leave to amend the complaint, erred in granting summary judgment, improperly sanctioned them, and should have disqualified itself. We reject all contentions.[2]

---

[1] We sometimes refer to plaintiffs by their first names to avoid confusion.

[2] The Talebs have filed motions on appeal, all of which we deny as follows.

On November 14, 2022, the Talebs filed a motion for reconsideration of this court's November 9, 2022 order denying them leave to file an amended civil case information statement. We deny the motion for reconsideration.

On January 31, 2024, the Talebs filed a motion to augment the record and request for judicial notice. Because the motion requests augmentation and judicial notice of matters not before the trial court, we deny the motion. The same day the Talebs filed that motion, they attempted to file a motion to augment the

2

# BACKGROUND

### I.    The first lawsuit, *Taleb I*

The Talebs moved into an apartment at Wyvernwood
Gardens in 2015.  Lili complained that her electricity bill was
abnormally high, and on July 10, 2017, Thurman sent an
electrician who found two cables attached to the Talebs' electric
meter that did not feed into their apartment.  Three days later,
the electrician returned but refused to investigate further
because Lili was recording the events.  That very day, Lili, self-
represented, sued the property management company, FPI
Management, Inc., for "overcharged electrical bills."  (*Taleb v.
Wyvernwood Garden Apartments/FPI Management Residential
Property Management* (Super. Ct. Los Angeles County, 2017,
No. BC668258) (*Taleb I*).)  The complaint did not allege a cause of
action but instead was a handwritten paragraph alleging that an
electrician discovered "unknown cables" that did not belong to
Lili's apartment, and that the apartment had a damaged wood
floor and was infested.[3]

---

record with a 23rd volume of the appellant's appendix.  We
received the motion but did not file it.  Because the proposed
appellant's appendix contains matters not before the trial court,
we do not file or consider it.

On February 2, 2024, the Talebs filed a motion to file a
corrected reply brief.  The motion is denied.

[3]    The trial court struck two subsequent pleadings Lili filed:
a first amended complaint that alleged the Los Angeles
Department of Water and Power (DWP) overcharged her, and a
second amended complaint for overcharges to her electrical bill
and damages for an uninhabitable unit.

Just weeks before trial was scheduled to begin in June 2019, the trial court heard Lili's motion to delay trial and to reopen discovery. Lili argued that as a self-represented litigant, she had difficulty participating in discovery, and service on defendant had been delayed. The trial court denied the motion, and that same day, Lili dismissed *Taleb I* without prejudice.

## II. The second action, *Taleb II*

A week after dismissing *Taleb I*, the Talebs filed the present action in July 2019 against Thurman, FPI Management, Inc., the DWP, and Marcelo Gigena and Rosie Casas, both of whom worked at the apartment complex. (*Taleb v. Thurman Interim California, LLC*, et al. (Super. Ct. Los Angeles County, 2019, No. 19STCV21671 (*Taleb II*).) The complaint generally alleged a neighbor was " 'bootlegging' " electricity from the Talebs' meter, and it stated causes of action for breach of lease, specific performance,[4] and conversion. The Talebs subsequently amended their complaint in November 2019, misnaming the amended pleading the "second" (rather than the first) amended complaint. That pleading alleged the same causes of action as the original complaint and continued to allege that neighbors were bootlegging the Talebs' "power feed."

Pursuant to a demurrer, the trial court dismissed with prejudice the conversion cause of action, thereby also dismissing FPI Management, Gigena, and Casas, as they were named only in that cause of action.

## III. The Talebs move to amend the complaint

---

[4] The complaint alleged two causes of action for specific performance, one against Thurman and a second against DWP.

4

The parties formally inspected the property in November 2020, and a supplemental inspection occurred on January 14, 2021.  The Talebs then designated their expert witnesses, both of whom testified at deposition that neighbors were not stealing the Talebs' electricity.  Lili also testified at her deposition that she no longer believed her electricity was being stolen.

On February 5, 2021, the Talebs moved for leave to file a "third" amended complaint to add a negligence cause of action against Thurman and previously-dismissed FPI Management, and to reallege the previously dismissed conversion cause of action against FPI Management, Gigena, and Casas.  The proposed pleading alleged that although the Talebs had initially suspected a neighbor was bootlegging their power, they had "since changed their position based on new information discovered on January 14, 2021" at the site inspection; that is, "[e]lectrical leakage" and degraded wiring were discovered.  The proposed negligence cause of action further alleged that Thurman and its management company owed the Talebs a duty to provide habitable living conditions and to avoid "continuing electrical leakage or old and degraded wiring," and breached their duties by failing to thoroughly inspect the electrical system and to provide habitable housing free from cockroaches, mold, mice, blood, and holes in the floor.

In their motion, the Talebs said they were raising the negligence cause of action to trigger their insurance policy.  Their new counsel, Michael Long, supported the motion with his declaration, stating he could not file the motion sooner because he had just substituted in on January 4, 2021, defense counsel

5

had refused to "grant extensions early on," and he had a heavy calendar.[5]

Thurman opposed the motion, arguing that the Talebs had pursued the bootlegging theory for four years (since filing *Taleb I*), they were attempting to reallege the dismissed conversion cause of action and to bring back in previously dismissed defendants, the amendment was untimely, and the proposed negligence cause of action was time-barred. Also, the Talebs had admitted in discovery that they were not making habitability claims, including ones based on flooring or infestation.

On March 3, 2021, the trial court heard and denied the motion. The trial court noted it had sustained a demurrer without leave to amend the conversion cause of action, and the Talebs were trying to circumvent that ruling by realleging conversion and bringing back in the dismissed defendants. The Talebs also cited no authority for their position that a desire to involve their insurance company was a ground to amend the complaint. More importantly, the Talebs had failed to explain when the facts giving rise to the amendment were discovered or why the amendment was not proposed earlier. Despite referring to the inspection on January 14, 2021, it was unclear how that inspection related to the "supposed uninhabitable conditions upon which their negligence claim" was based. The trial court

---

[5] The Talebs represented themselves until October 2019 when an attorney substituted in on a limited basis. In March 2020, Stanley Wade substituted in as counsel for the Talebs. Long then substituted in as counsel on January 4, 2021. He substituted out of the case in December 2021.

6

observed that the Talebs had said in discovery that they were *not* making habitability, bodily injury, or property claims, apart from conversion of their electricity. Long's explanations did not provide valid excuses for the delay. The evidence showed that the Talebs had known about the facts underlying their case for six years, as early as 2015, and could have raised them in *Taleb I*. Finally, the trial court found that amendment "at this late date" would prejudice defendants, as FPI Management had already been dismissed from the action.

IV.    Thurman moves for summary judgment

In August 2021, Thurman moved for summary judgment or, alternatively, for summary adjudication, of the two causes of action alleged against it: breach of lease and specific performance.[6] Both causes of action were based on the alleged theft of electricity from the Talebs. To support its motion, Thurman submitted Lili's January 2021 deposition testimony admitting she did not "think that anyone is stealing electricity"; Knarik's February 2021 deposition at which her counsel stipulated that nobody was stealing electricity from her apartment; and the deposition testimony of the Talebs' two experts, both of whom had ruled out electricity theft as a cause of any high bills. Thurman argued that these admissions precluded the Talebs from establishing that Thurman breached the lease by failing to keep the electrical meter box secure from tampering, that Thurman caused the Talebs any harm, or that the Talebs were entitled to specific performance, which, in any event, was a remedy and not a cause of action.

---

[6]    The other remaining defendant, DWP, separately moved for summary judgment.

7

The Talebs did not submit a timely memorandum of points and authorities or separate statement of disputed material facts in opposition. Instead, they submitted counsel Long's declaration asserting that Thurman's requested relief was "*moot* to the extent" the Talebs had already stipulated no theft occurred. At the same time, the Talebs submitted a request to dismiss Thurman without prejudice[7] and yet filed a third lawsuit naming Thurman and FPI Management as defendants.[8] Also, the day before the hearing on the motion for summary judgment, the Talebs moved ex parte for leave to file an opposition and withdrew Long's declaration.

On November 24, 2021, the trial court ruled on three matters: (1) whether to dismiss Thurman, (2) the Talebs' ex parte application for leave to file opposing papers, and (3) Thurman's motion for summary judgment. First, the trial court rejected the Talebs' voluntary dismissal of Thurman, finding it to be an improper litigation tactic. Second, the trial court found that the Talebs had not shown good cause to file late opposition papers, noting that the Talebs were taking contradictory positions: the summary judgment motion was moot *and* they should be allowed leave to file opposing papers. Finally, the trial court exercised its discretion under Code of Civil

---

[7] Via an ex parte application, Thurman opposed the dismissal on the ground its summary judgment was pending.

[8] The trial court ordered the Talebs to file a notice of related case and later deemed the new action related to this one.

8

Procedure[9] section 437c, subdivision (b)(3), to grant Thurman's unopposed motion for summary judgment.

V.    Thurman moves for sanctions against the Talebs and their counsel

After obtaining summary judgment, Thurman moved for sanctions against the Talebs and Long in the amount of $150,061.50 under section 128.5.  In its motion, Thurman argued that the Talebs lacked a factual basis to initiate litigation, as Lili filed *Taleb I* just weeks after complaining to property management about her high electrical bills.  Then, about a year and half after filing *Taleb II*, the Talebs tried to change their theory of the case after the January 14, 2021 inspection but did not dismiss their complaint when the trial court denied leave to amend, thereby forcing Thurman to file its motion for summary judgment.  Only *after* Thurman filed that motion did the Talebs improperly seek to dismiss the action and to file a third action against Thurman.

Thurman also based its request for sanctions on the Talebs' "unprofessional and insulting" conduct throughout the litigation, which included disparaging defense counsel for where she went to law school, Knarik raising her voice in a threatening manner to counsel, Lili's threats to file criminal charges against counsel, discovery abuses, Knarik watching television while being deposed remotely, and Knarik intimidating the interpreter during deposition.  Thurman also submitted statements Lili made in an October 2019 declaration instructing Thurman's counsel to drop objections to discovery and to consider asking a criminal defense

---

[9]    All further undesignated statutory references are to the Code of Civil Procedure.

9

attorney "what an aggressive prosecutor might do, armed with information that a party hindered the ability of a victim of a property crime to prove the cause of a theft, and the identity of the perpetrators. I know what would have happened in the former Soviet Union, and what does still happen in present-day Russia." She made further statements in that declaration denigrating people of various backgrounds as " 'culturally inferior' " and "less intelligent."

In opposition to the motion, the Talebs argued that they did not act in bad faith and Thurman failed to comply with section 128.5's safe harbor provision. The Talebs argued that from the time they moved into the apartment, the DWP had been overcharging for electricity. In July 2017, an electrician confirmed that there were strange wires coming out of their meter, and this supported Lili's initial belief that someone was stealing her electricity. When the January 2021 inspection revealed that there was a stray current, the Talebs moved to amend their complaint. Thus, at all times, the Talebs acted in good faith, with a basis for their claims.

On February 10, 2022, the trial court granted the motion for sanctions, detailing its reasons in a six-page minute order. After describing the action's procedural history, the trial court first found that section 128.5's safe harbor provision did not apply because Thurman sought sanctions for the Talebs' bad faith conduct occurring over three-and-a-half years and not for filing any pleading. Second, the trial court found that sanctions were warranted, but only for a portion of the action. Because the Talebs' electrical box had unusual wiring, their initial suspicions of theft were not "wholly frivolous." But once they learned on

10

January 14, 2021 that no theft had occurred, any reasonable attorney would agree that the Talebs' claim was without merit.

The trial court noted that the Talebs did try to change the theory of the case by moving to amend the complaint. However, after the trial court denied that motion on March 3, 2021, the Talebs "did nothing." As of March 3, 2021, the Talebs knew their "existing claim was without merit, yet they continued with the case." Further, following the inspection and the investigations of their experts, the Talebs delayed dismissing the action, waiting until *after* Thurman moved for summary judgment to seek dismissal. The history of the case therefore demonstrated that the Talebs or their counsel engaged in "a scorched earth litigation campaign that frequently included personal insults, as well as threats of further litigation and/or criminal prosecution. . . . . And clearly [the Talebs] are not finished with Defendants[,] having filed yet a third action against them. The series of lawsuits, the abject failure to conduct any investigation into their theory of electricity theft until over three years after they first sued [Thurman], the failure to dismiss [Thurman] at any time before [Thurman] filed its motion for summary judgment, [the Talebs'] assertion that the motion was moot and subsequent reversal all combine to satisfy the Court that" the Talebs and counsel Long acted in bad faith.

Accordingly, the trial court granted sanctions against the Talebs and Long, jointly and severally, in the amount of $36,444, which represented the fees Thurman incurred after March 3, 2021.

VI.    The Talebs seek to disqualify Judge Scheper

On March 15, 2022, the Talebs and their former counsel Long each filed a statement to disqualify Judge Scheper under

11

section 170.3, citing as evidence of the judge's alleged bias the history of the case and the judge's rulings.  On March 17, 2022, Judge Scheper issued an order striking the statements of disqualification.  (§ 170.4, subd. (b).)

## DISCUSSION

I.   Appealability

The Talebs purport to appeal from four matters:  (1) the order denying them leave to amend the complaint, (2) the order granting Thurman summary judgment, (3) the section 128.5 sanctions order, and (4) the disqualification order.  Although neither party raised any appealability issue, we have a duty to consider it in every case. (*Winger v. Rice* (1986) 176 Cal.App.3d 679, 682.)

Relevant to the first and second matters,[10] the trial court issued judgment in Thurman's favor on April 27, 2022.  On May 2, 2022, the Talebs filed notices of appeal purporting to appeal from a judgment entered January 6, 2022.  January 6, 2022, however, is merely the date the trial court issued its order granting summary judgment.  An order granting summary judgment is not an appealable order. (*Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 223.)  Rather, appeal must be taken from the *judgment*.  Therefore, the Talebs' notices of appeal do not correctly identify the appealable judgment and instead identify the nonappealable order.

---

[10]   An appeal from an order denying leave to amend the complaint is encompassed in an appeal from the judgment. (§ 906; *Wassmann v. South Orange County Community College District* (2018) 24 Cal.App.5th 825, 852.)

Even so, we generally "must liberally construe a notice of appeal in favor of its sufficiency. [Citation.] A notice of appeal shall be ' "liberally construed so as to protect the right of appeal if it is *reasonably clear* what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 75.) It is reasonably clear that the Talebs were appealing the judgment entered after the trial court granted Thurman's summary judgment motion. (*Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 820 [appeal from summary judgment order construed to be from judgment]; *Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288 [same]; see *Yolo County Dept. of Child Support Services v. Lowery* (2009) 176 Cal.App.4th 1243, 1246 [notice of appeal misidentifying date judgment entered liberally construed].) Thurman was not misled or prejudiced by the error in the notice of appeal, because Thurman has never raised any appealability issue, and it has defended the judgment in its respondent's brief. Accordingly, we liberally construe the notice of appeal to be from the judgment entered on April 27, 2022.

As to the third matter on appeal, on April 8, 2022, the Talebs filed timely notices of appeal from the February 10, 2022 sanctions order. (See generally § 904.1, subd. (a)(12) [sanctions order over $5,000 is separately appealable].)

Finally, Judge Scheper's March 17, 2022 order striking the Talebs' statement of disqualification is not appealable. (§ 170.3, subd. (d).) Review may only be obtained by seeking a writ of mandate in the appellate court within 10 days of service of notice of entry of the decision, with an additional five days for service by

13

mail.[11] (*Ibid.*)  As the order is not appealable, this issue is not properly before us.

II.     Denial of leave to amend complaint

The Talebs contend that the trial court abused its discretion by denying their motion for leave to amend the complaint.  As we now explain, we disagree.

We review the denial of a motion for leave to amend a complaint for abuse of discretion.  (*Foroudi v. Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1000.)  Although such motions are generally liberally granted and may even be made during trial, leave to amend should be denied where amendment would be futile or where allowing amendment would prejudice the opposing party.  (*Id.* at pp. 1000–1001; *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175 (*Melican*).)  A trial court may also consider unwarranted delay in seeking leave to amend, and a reviewing court is less likely to find an abuse of discretion where the amendment is offered after a long, unexplained delay or an absence of diligence.  (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.)

Here, the Talebs characterize their proposed amendment as primarily seeking to change their general theory from theft of electricity to a stray current theory.  That is not a complete picture of what they sought to do.  They also sought to reallege the dismissed conversion cause of action, which was a blatant violation of the trial court's dismissal order.  And their new negligence cause of action alleged that Thurman and previously dismissed FPI Management breached a duty of care to provide

---

[11]     Judge Scheper's order advised the Talebs that review had to be sought via a writ of mandate.

14

safe electrical wiring *and* habitable housing free of mold, holes in the floor, and infestation. The proposed cause of action therefore did two essential things: (1) it added a claim of habitability that the Talebs had not previously pursued and had expressly disavowed in discovery responses, and (2) it changed the electrical theory from theft to bad wiring.

As to the first claim, this litigation began in 2017, when Lili filed *Taleb I*. Although that complaint referred to a damaged floor and infestation in the apartment, Lili dismissed that action without prejudice in June 2019 when the trial court refused her request to continue the discovery deadline. When the Talebs filed *Taleb II* just weeks later, they did not reallege that the apartment was uninhabitable, alleging only that neighbors were stealing their electricity. Significantly, in discovery responses dated September 2019, the Talebs represented they were not pursuing any claim or damages based on habitability related to conditions in their apartment. The litigation therefore proceeded for years on the understanding that habitability claims were not at issue. As to the second claim, since filing *Taleb I* in 2017, the Talebs had pursed a theory that neighbors were stealing or bootlegging their electricity. The amendment sought to change that theft theory to a stray-current theory.

Where a new cause of action would change "the tenor and complexity of the complaint from its original focus" and would require, for example, additional discovery and a continuance of trial, denying leave to amend cannot be an abuse of discretion. (*Magpali v. Farmers Group* (1996) 48 Cal.App.4th 471, 487.) Here, allowing the amendment would have prejudiced Thurman by requiring additional discovery to allow it and the newly added defendant FPI Management to gather evidence, particularly

15

regarding the new habitability theory. This in turn would have necessitated pushing back trial in litigation that had been ongoing since 2017. Given this, the amendment would have prejudiced Thurman. (See, e.g., *id.* at pp. 487–488 [leave to amend complaint appropriately denied where defendant would have to marshal evidence to counter new allegations].)

The Talebs counter that Thurman was not prejudiced because a trial date had not been set. That is not wholly accurate. Trial had been scheduled for March 1, 2021. But in January 2021, the parties agreed to vacate the trial date and to set a trial setting conference for March 3, 2021, the same day the motion for leave to amend the complaint was to be heard. Therefore, when the Talebs' motion for leave to amend the complaint was heard, a trial date had been set but vacated, and the trial court was going to set a new trial date. Also, although *Taleb II* had been pending for about a year and a half, litigation on this matter had been pending for almost four years, since *Taleb I* was filed in July 2017. Thus, the matter had been ongoing for over five years.

Moreover, the Talebs failed to offer a valid explanation for the delay in seeking amendment in 2021 for a habitability claim they had known about for four years, since 2017, when Lili filed *Taleb I*. (See, e.g., *Melican, supra*, 151 Cal.App.4th at p. 176 [plaintiff's five-year delay was "clearly unreasonable"].) Instead, they claim their delay was due to excusable neglect. (See § 473, subd. (a)(1) [court has discretion to allow amendment to any pleading].) The Talebs base their claim of excusable neglect primarily on their self-represented status from the filing of *Taleb I* to March 2020, when Stanley Wade substituted in as counsel. However, their pro per status did not constitute

16

excusable neglect for any failure to conduct discovery or otherwise to litigate their case. Rather, self-represented litigants are held to the same standard of care as attorneys. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985.)

The other reasons their counsel gave for the delay in seeking amendment neither demonstrated excusable neglect nor were reasonable. Counsel merely noted he had just substituted in on January 4, 2021 and had a heavy calendar. But the Talebs cite no authority for the proposition that a late substitution or heavy calendar are valid grounds to permit amendment under those circumstances, and the trial court clearly acted within its discretion to disregard these excuses.

To the extent the Talebs suggest they could not have moved to amend their complaint until after the January 14, 2021 inspection revealed their electricity was *not* being stolen, we disagree. The inspection was irrelevant to the habitability claims based on damaged floors, mold, and infestation. As to the inspection revealing the new stray current theory, the Talebs did not explain to the trial court why the inspections did not occur until November 2020 and January 2021. Instead, in their moving papers below, the Talebs vaguely alluded to discovery issues which they claimed inhibited discovery, but they did not explain how Thurman prohibited them from doing the inspection earlier or conducting other discovery that might have shown that neighbors were not stealing electricity. Similarly, on appeal, the Talebs vaguely say in their opening brief that they were at the mercy of Thurman and other defendants in scheduling and that defendants obstructed discovery of the stray current issue, but they fail to offer details until their reply brief. Because this argument was not fully presented until the reply brief, Thurman

17

did not have a fair opportunity to respond. (See, e.g., *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 592 [tardy arguments made in reply are forfeited because appellants must give other side fair notice and opportunity to respond].) More importantly, the Talebs did not argue in the trial court that Thurman improperly prevented the inspection. The failure to raise this issue adequately in the trial court also constitutes a forfeiture on appeal. (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 949–950; see, e.g., *Ocean Street Extension Neighborhood Assn. v. City of Santa Cruz* (2021) 73 Cal.App.5th 985, 1008.)

We therefore conclude that the trial court did not abuse its discretion by denying leave to amend the complaint because the Talebs failed to give a valid excuse for the delay in alleging the negligence cause of action, allowing the amendment would have brought back in a previously-dismissed conversion cause of action and FP Management, and the amendment would have prejudiced Thurman.

III. Grant of summary judgment

The Talebs next contend that the trial court erred by granting Thurman's motion for summary judgment. We disagree.

Summary judgment is designed to cut through the parties' pleadings to determine whether, despite their allegations, trial is necessary to resolve the dispute. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party bears the burden of persuasion that there is no triable issue of material fact and the movant is entitled to judgment as a matter of law. (§ 437c, subd. (c); *Aguilar*, at p. 850.) A moving defendant must show that the plaintiff cannot establish one or more elements of

18

the cause of action.  (*Aguilar*, at p. 853.)  A defendant meets its burden by presenting affirmative evidence that negates an essential element of a plaintiff's claim.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  If the moving defendant meets its burden, the burden shifts to the opposing plaintiff to raise a triable issue of material fact.  The opposition shall include a separate statement that responds to each material fact the moving party contends is undisputed and cites supporting evidence.  (§ 437c, subd. (b)(3).)  "Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion."  (*Ibid.*)

We review the record de novo and independently determine whether triable issues of material fact exist.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 334.)  "In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court.  We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition— assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' "  (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)  However, we review a ruling granting summary judgment based on failure to comply with the separate statement requirement of section 437c, subdivision (b)(3), for abuse of discretion, even though the moving party still must meet its initial moving burden.  (*Rush v. White Corp.* (2017) 13 Cal.App.5th 1086, 1097.)

Here, Thurman met its initial burden of producing evidence showing that there was no material issue of fact that the Talebs' neighbors were not stealing or bootlegging the Talebs' electricity, which was the sole theory underlying the breach of lease and specific performance causes of action. Thurman submitted Lili's January 2021 deposition testimony admitting that she did not "think anyone is stealing electricity," Knarik's February 2021 deposition at which her counsel stipulated that nobody was stealing electricity from her apartment, and the deposition testimony of the Talebs' two experts stating they had ruled out electricity theft from the Talebs as a cause of their high bills. This evidence shifted the burden of producing evidence sufficient to create a disputed material fact to the Talebs.[12]

The Talebs, however, did not file a timely opposing separate statement or memorandum of points and authorities. Instead, they filed their counsel's declaration conceding that "the requested relief is *moot* to the extent" the Talebs had already stipulated "that no theft occurred." Although the Talebs later withdrew this declaration, it nonetheless was a concession the motion was meritorious. The trial court, after denying the Talebs leave to file a late separate statement, exercised its discretion under section 437c, subdivision (b)(3), and appropriately granted the motion.

In their opening brief on appeal, the Talebs do not directly address the trial court's exercise of discretion under section 437c, subdivision (b)(3). But in their reply brief on appeal, the Talebs state that the trial court "instructed" or "invited" them to file an

_____

[12] At the hearing on the motion for summary judgment, the Talebs' counsel again conceded that third-party theft of electricity was moot but argued that other issues remained.

20

opposition and separate statement, implying that the trial court allowed the untimely opposing papers to be filed and considered them.  This is wrong.  The trial court expressly found "no basis" or good cause to allow the late briefing.  Therefore, Thurman's motion was unopposed, except by Long's declaration conceding its merit.

Otherwise, the Talebs appear to make two arguments why the motion for summary judgment should have been denied. First, they argue that they submitted evidence from their experts supporting the stray current theory and showing they had "electrical damages."  However, that evidence was in the untimely opposing papers which the trial court denied leave to file.  Moreover, the evidence went to a theory not at issue because the trial court had denied leave to file the amended complaint. (See generally *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74 [pleading determines the scope of summary judgment]; *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 [moving party need not refute liability on theories not included in pleadings].)

Second, the Talebs argue that the trial court improperly rejected their attempt to dismiss Thurman without prejudice, which would have rendered Thurman's motion for summary judgment moot.  Although a plaintiff generally has the right to dismiss a defendant or an action without prejudice before trial commences (§ 581, subds. (b), (c)), there are exceptions to the general right to dismiss.  (*Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 542.)  One exception is where the action has reached a determinative adjudication by way of a summary judgment motion.  (*Id.* at p. 543; see, e.g., *Mary Morgan, Inc. v.*

21

*Melzark* (1996) 49 Cal.App.4th 765, 770–771 [dismissal properly rejected where summary judgment motions were pending].)

*Cravens v. State Bd. of Equalization* (1997) 52 Cal.App.4th 253 applied that exception. In that case, the plaintiff did not oppose the defendant's summary judgment motion and instead filed a request for dismissal without prejudice the day before the hearing on the motion. Unaware of the dismissal, the defendant appeared at the hearing, where the trial court exercised its discretion under section 437c, subdivision (b)(3), and granted the motion. *Cravens*, at page 257, affirmed the judgment, stating that the plaintiff could not avoid judgment "by the stratagem of filing a last minute request for dismissal without prejudice."

Similarly here, the record shows that the Talebs tried to avoid the consequences of a concededly meritorious summary judgment motion by filing a dismissal without prejudice. This was an improper attempt to avoid the consequences of summary judgment and, accordingly, the trial court properly rejected the dismissal. There being no triable issue of material fact, the trial court properly granted summary judgment in Thurman's favor.

IV.    Sanctions

Next, the Talebs contend that the trial court's sanctions order issued under section 128.5 must be reversed. We conclude that the trial court did not abuse its discretion by sanctioning the Talebs under section 128.5.

Section 128.5, subdivision (a), allows a trial court to order a party, the party's attorney, or both to pay the other party's reasonable expenses, including attorney fees, incurred as a result of "actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." " 'Actions or tactics' " include making or opposing motions and filing

pleadings. (§ 128.5, subd. (b)(1).) " 'Frivolous' means totally and completely without merit or for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).) The party moving for sanctions must meet its burden of proving that the opposing party's action or tactic was (1) totally and completely without merit, measured by an objective, reasonable attorney standard, or (2) motivated solely by an intention to harass or cause unnecessary delay, measured by a subjective standard. (*Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 893.) Whether sanctions are warranted depends on evaluating all the circumstances surrounding the questioned action. (*Ibid.*)

We review section 128.5 sanctions orders for an abuse of discretion. (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.) "Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. [Citations.] 'We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review.' " (*Id.* at pp. 1225–1226.)

Here, the trial court did not sanction the Talebs for filing the complaint or for any specific pleading or motion. It instead found that as of March 3, 2021, when the trial court denied leave to amend the complaint, the Talebs pursued a frivolous action, forcing Thurman to file a motion for summary judgment. The trial court further based sanctions on the Talebs' bad faith litigation conduct, as exemplified in Knarik's behavior during her deposition, Lili's threats and inappropriate comments in her declaration, and the Talebs' attempts to dismiss Thurman to avoid an adverse ruling on the summary judgment motion.

23

In arguing that the trial court abused its discretion, the Talebs do not directly address the trial court's reasons for sanctioning them. They instead appear to make two arguments.

First, they argue that Thurman failed to comply with section 128.5's safe harbor provision. The provision states: "If the alleged action or tactic is the making or opposing of a written motion or the filing and service of a complaint, cross-complaint, answer, or other responsive pleading that can be withdrawn or appropriately corrected, a notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court, unless 21 days after service of the motion or any other period as the court may prescribe, the challenged action or tactic is not withdrawn or appropriately corrected." (§ 128.5, subd. (f)(1)(B).) On its face, the safe harbor provision applies where sanctions are sought for frivolous pleadings that could be withdrawn or corrected. It does not apply where, as here, a court awards sanctions for past bad faith conduct and tactics. (See, e.g., *In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 147 [safe harbor provision inapplicable where sanctions based on appellant's misrepresentation to court and delay in seeking trial continuance].)

Second, the Talebs repeat their argument that they brought the action in good faith, based on the electrician's July 2017 report that stray wires were coming out of their meter, and they properly sought leave to amend when they discovered at the January 2021 inspection that neighbors were not bootlegging

24

their electricity.[13]  However, this was not the conduct the trial court found sanctionable.  Rather, the trial court *agreed* that the Talebs initially had cause to believe their electricity was being stolen based on the stray wires and *acknowledged* that they moved to amend their complaint to allege the new stray current theory after discovering that electricity was not being stolen.  This is why the trial court sanctioned the Talebs and their counsel only for conduct *after* March 3, 2021, the day the court denied leave to amend.  At that point, the Talebs had no viable theory that Thurman was breaching the lease by allowing neighbors to steal their electricity.  (See, e.g., *West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 704 [once "substance of litigation became insubstantial in the extreme," no reasonable attorney would continue claim].)  Nonetheless, the Talebs did not take any action until months later, when Thurman had already incurred the expense of filing its motion for summary judgment.  The trial court was within its discretion to find that waiting to file the dismissal request until just before Thurman's motion for summary judgment was to be heard was a tactic solely intended to cause unnecessary delay.  (§ 128.5, subd. (a).)

The Talebs ignore the other basis for the trial court's order, that the Talebs' litigation campaign included personal insults and threats of criminal prosecution.  Such conduct is clearly abusive and done in bad faith.  (See, e.g., *California Casualty Management Co. v. Martocchio* (1992) 11 Cal.App.4th 1527, 1537 [threatening to kill witness was sanctionable, bad faith conduct];

---

[13]    The Talebs also appear to argue that the trial court found their motions to compel were sanctionable.  The trial court made no such finding in its section 128.5 sanctions order.

25

*Dwyer v. Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1435 [sanctions based partly on counsel's use of "inflammatory, vulgar and racist testimony through trial witnesses"].)

We therefore conclude that the trial court did not abuse its discretion by sanctioning the Talebs.

## DISPOSITION

The judgment and postjudgment orders are affirmed. Thurman Interim California, LLC is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.